THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY JOYNER, Defendant-Appellant.

Fourth District No. 4—82—0154

Opinion filed October 21, 1982.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, and Julie P. Verheye, law student, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was tried *in absentia* in the circuit court of Macon County for the offense of burglary in violation of section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a)). A jury convicted him of the offense and he was sentenced to four years' imprisonment.

On appeal defendant challenges the composition of the jury which tried and convicted him; he further claims that the proof was insufficient to establish that he wilfully avoided trial, thus invalidating proceedings taken in his absence. No question of reasonable doubt has been raised and therefore we need not delve into the facts of the case.

On January 18, 1982, which appears to be the opening day for jury trials in the county and before any cases were called for trial, defense counsel, together with a number of other counsel representing criminal defendants, filed a verified motion challenging the jury array. The affidavit supporting the motion must be taken as true, since no counteraffidavits were filed and at one point in the proceedings the People offered to confess the motion.

That affidavit discloses that approximately 300 veniremen had been drawn by the Macon County Jury Commission for the January 1982 venire; that one of the cases on the January call involved the A. E. Staley Manufacturing Company and Swift and Company, an Esmark Company subsidiary; and that this case was anticipated to last about three months. The affidavit further states that "the Court" caused to be sent to all of the 300 veniremen a questionnaire which

contained, among others, the following questions:

> "6. Are either of your parents or any of your children employed by the A. E. Staley Company? Yes\_\_\_ No\_\_\_
>
> 7. Have you or your spouse or any of the above ever been employed by the A. E. Staley Company? Yes\_\_\_ No\_\_\_
>
> 8. Have you, your spouse, or any of the above ever been employed by Swift and Company? Yes\_\_\_ No\_\_\_
>
> 9. Do you or your spouse own any shares of stock or any bonds issued by the A. E. Staley Company? Yes\_\_\_ No\_\_\_
>
> 10. Do you or your spouse own any shares of stock issued by Swift and Company or Esmark? Yes\_\_\_ No\_\_\_."

It further appears from the affidavit that if any veniremen answered in the affirmative to any of the foregoing questions, he was deferred until some following month; and that the Staley-Swift case was only one of approximately 200 cases which had been called for trial in January 1982.

A hearing was held on the motion before the chief judge of the circuit, who was apparently responsible for the questions and the consequent deferrals. One of the defense counsel testified at the hearing and stated that 37 persons were deferred on account of some connection with either Staley or Swift and that 84 persons remained in the venire which reported for service on January 18. The remainder of the 300 is apparently accounted for by failure of notice, physical or mental disability, or hardship.

The reason for the deferrals is not articulated at length in the record except for one finding by the chief judge as follows:

> "The January jury list was screened to eliminate jurors who would be challenged for cause as employees, stockholders, or friends of the Staley v. Swift civil trial [*sic*], which was represented to last in excess of three months."

The motion was then denied.

Defendant's trial was then assigned to another circuit judge and the motion was renewed before him. It was again denied as having already been ruled upon by the chief judge.

It is apparent from reading his remarks in ruling on the challenge to the array that the chief judge was principally concerned with the matter of selection at the initial stage, that is, drawing names from a

drum for the jury commission:

> "This jury to start with was drawn like any other jury. There was an order that three hundred jurors be drawn. It was drawn exactly like any other panel by have [*sic*] a Jury Commissioner, a Clerk, a Judge, and a person from the County Clerk's office, the Circuit Clerk was present. The drawing was like we've had for months and or years to get the three hundred. And then, we had the screening process that is done one way or another. Every jury panel by—usually the jury panel sends out—the Jury Commission sends out a card to a jury saying you are coming up for jury duty in two months. If you have a question or a problem call this number which is the Clerk of the Jury Commission. Then, they get into the matter of interviews which are held the first Tuesday of each month getting the juror's problem or their question. In this case, being aware of the unusual case, the process was a little more direct by pointing out to jurors about this problem of the Staley case which we haven't had a case that lasted three months in my recollection, that goes thirty-years; and we knew that it was going to be a special problem to every juror; and, therefore, the card that went out under the name of the Jury Commission was to them to ask them for their problems that may arise from this case. They also asked them about disqualification for cause. But, that is the Jury Commission function. I freely admit that the Jury Commission was assisted in this in certain things that was done by the courts in trying to get a jury that would proceed today as we had been assured the trial would take place. ***"

This argument ignores the fact that prejudice to a defendant may occur by systematic exclusion of a discrete group of the community either from the jury drum itself or from the venire which is selected by a jury commission and sent to courtrooms for trial. In *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, the Supreme Court struck down a Louisiana statute which exempted women from jury duty under certain circumstances. The court held that a requirement that a jury be drawn from a fair and representative cross-section of the community is fundamental to the sixth amendment right to a jury trial in criminal cases. The court also held that it was not dictating any particular method of jury selection, "but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." 419 U.S. 522, 538, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.

In *Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664, the Supreme Court was again faced with a question of exclusion of women from juries. In that case the court laid down three elements which must be established in order to present a *prima facie* violation of the fair-cross-section requirement: (1) that the class alleged to have been excluded is a "distinctive" group within the particular community; (2) that the representation of this group in the venire from which the jury was selected was not fairly and reasonably related to the number of such persons in the community; and (3) that the underrepresentation of such persons in the venire is a result of a systematic exclusion of that class of persons in the jury selection process.

While we will not be understood as condoning the procedures employed in the instant case, we find that defendant here has failed to make out the *prima facie* case under *Duren*. The evidence clearly, and by the court's own admission, met the third prong of the test, systematic exclusion. However, the first two prongs of the test have not been met.

Defendant's chief complaint is that he was denied "blue collar" workers on his jury. He did establish that 37 persons connected with either Staley or Swift were deferred, but there is no showing as to how many of these were "blue collar" persons as opposed to "white collar" workers, directors, executives, stockholders, creditors, or relatives of persons connected with either of the businesses. Secondly, defendant has failed to establish that the composition of the venire from which his jury was selected was not reasonably related to the general composition of the community. No evidence was presented as to the number of "blue collar" workers in the final venire as compared with the number of "blue collar" workers in the community generally, nor was there any evidence of the percentage of the population of Macon County which could reasonably be considered "blue collar."

■ The trial court committed error, but we are unwilling and unable under *Duren* to adopt a *per se* rule for which defendant appears to be arguing, *i.e.*, that any exclusion is a sixth amendment violation. *Duren* requires evidence. We are also constrained to remark that the trial court's finding that Staley and Swift people "would be challenged for cause" is not supported by the record. There is no showing of any pretrial stipulation in that case that connection with either company would be an automatic challenge for cause. If the trial court were so persuaded, it was overreaching the prerogative of counsel in that case.

Defendant's second contention is that the State did not produce substantial evidence that he was wilfully absenting himself from trial and it was therefore error to try him *in absentia*.

Defendant's chief complaint is that the State did nothing to ascertain his whereabouts or that he was avoiding trial, unlike *People v. Powell* (1981), 95 Ill. App. 3d 93, 419 N.E.2d 708, and *People v. Zielinski* (1979), 77 Ill. App. 3d 157, 395 N.E.2d 1020, where the record demonstrated affirmative efforts in that regard.

We do not believe that heroic efforts are required of the State. In *People v. Watson* (1982), 109 Ill. App. 3d 880, 883, it was said:

> "Rather than require the State to negate every possibility that a defendant's absence was not wilful, we hold that a *prima facie* case is established by showing that the statutory requirements have been complied with. Only if the defendant introduces some evidence that he did not act wilfully should more be required of the State. [Citations.]"

The record here shows that the defendant was admonished at arraignment that he might be tried *in absentia* if he failed to appear; he was personally present at a pretrial call when the case received a specific date for trial; his attorney stated that he had personally informed defendant of the trial date and at the hearing on his motion for new trial defendant corroborated this; his only excuse as presented on the latter occasion was that he must have "misunderstood the date." There can be no doubt that defendant was charged with knowledge of his trial date.

Section 4—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 4—5) provides:

> "Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

██ *Powell* clearly indicates that a decision to proceed *in absentia* is a matter for the discretion of the trial judge. The record here supplies no basis for disturbing that discretion.

The judgment and sentence of the circuit court of Macon County is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.