THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MIGUEL CORTES, Defendant-Appellant.

First District (2nd Division)   No. 81—3099

Opinion filed May 1, 1984.

Leonard L. Cavise, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Jonathan Mark Minkus, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant Miguel Cortes was indicted, along with Elmer Meeks, Daniel Figueroa, and Elisa Cortes, for conspiracy to deliver a controlled substance (heroin), and with illegal delivery of that substance. All four defendants were tried together; defendant and Meeks did not appear at trial and were tried *in absentia*. Following a jury trial,

defendant was found guilty on both counts and was sentenced *in absentia* to two 15-year terms of imprisonment to run concurrently. Defendant appeals.

Officer Harold Jenkins of the village of Maywood police department was assigned to the Northeastern Metropolitan Narcotics and Dangerous Drugs Enforcement Group. On June 5, 1980, Jenkins was assigned to "the Elmer Meeks case." Jenkins, operating undercover, met with Meeks and arranged to purchase a quantity of heroin and cocaine. Meeks rode with Jenkins to the 2800 block of West Dickens in Chicago where they picked up a woman named Maria and her young son. They then drove to a Jewel parking lot at the 3500 block of North Broadway. Meeks told Jenkins that the drugs had been taken back to storage. Meeks then said that he would have to locate Daniel Figueroa or "his brother Popeye" to make the delivery of heroin. Jenkins identified "Popeye" as defendant.

The foursome then drove to the 2500 block of West Fullerton where Meeks left the car and spoke with defendant on the sidewalk. Meeks returned to the car and told Jenkins that he had just spoken to "Popeye" and that "Popeye" would locate Figueroa and the two of them would deliver the heroin. Jenkins then saw defendant enter a brown Lincoln.

Jenkins drove back to the 2800 block of Dickens where the woman and young boy left and where Meeks said he would wait on the sidewalk "for Danny or Popeye." A few minutes later, defendant arrived in the brown Lincoln and spoke with Meeks. Ten minutes later, Figueroa arrived and conversed with Meeks and defendant. After two to five minutes, defendant left. Meeks informed Jenkins that Figueroa had said his wife "Ella" had gone to get the heroin. At 10:30 p.m., after waiting for about an hour, Figueroa and Meeks entered Jenkins' car. Meeks told Jenkins that they were going to look for Ella. After failing to find her car on the 1800 block of north Albany, Jenkins returned to the 2800 block of Dickens.

At about 11 p.m., defendant returned and began talking with Meeks and Figueroa.

After a few minutes Meeks came over to the car and informed Jenkins that he believed Ella had gone to Lake Shore Drive to get the heroin and that she would arrive in about 20 minutes. She did not arrive until about 12 a.m. at which time she spoke to Meeks, Figueroa and defendant for three to four minutes. She then got in her car and left and Meeks informed Jenkins that she would be back in 20 minutes with the heroin. Ella returned at 12:45 a.m. and she spoke with Meeks, Figueroa and defendant for one to two minutes. Meeks then

entered Jenkins' car, handed him two clear plastic bags containing heroin, and asked for the balance of the purchase price. Jenkins refused to pay until he received the full amount of heroin he had requested. Meeks got out of the car and spoke to Ella, Figueroa and defendant. Meeks, Ella and defendant walked over to Ella's car and Figueroa entered Jenkins' car. Meeks then got Jenkins' car and Figueroa got out and stood on the sidewalk with Ella and defendant. In Jenkins' car, Meeks handed Jenkins three more clear plastic bags containing heroin. Jenkins then signalled other undercover officers to move in. The officers arrested defendant but were unable to capture Figueroa and Ella.

Defendant was arraigned on October 14, 1980. He attended subsequent pretrial hearings until February 4, 1981, when, upon his failure to appear, a bond forfeiture and warrant issued against him. After his failure to appear, nine additional pretrial hearings were held which defendant failed to attend. At a hearing on September 22, 1981, the court ordered that a certified letter be sent to defendant advising him that he would be tried *in absentia*. On October 2, 1981, Elisa Cortes (Ella), Daniel Figueroa, Elmer Meeks and defendant were tried before a jury. Meeks and defendant failed to appear and were tried *in absentia*. The jury found defendant guilty of conspiracy to deliver a controlled substance and delivery of a controlled substance. The court sentenced defendant *in absentia* to two 15-year terms of imprisonment to run concurrently. Defendant appeals from the jury's verdict and the court's sentence.

■ Defendant first contends that the trial court erred by failing to advise him that he could be tried *in absentia* if he failed to appear for trial. Section 113—4(e) of the Code of Criminal Procedure of 1963 provides as follows:

> "If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." (Ill. Rev. Stat. 1981, ch. 38, par. 113—4(e).)

Defendant contends that he did not receive the foregoing admonishment prior to trial and that therefore, his conviction must be reversed and the cause remanded for a new trial. We disagree.

Section 113—4(e) requires that the admonishment be given at arraignment "or at any later court date on which he is present." (Ill. Rev. Stat. 1981, ch. 38, par. 113—4(e).) In the instant case, there

were 14 pretrial hearings following arraignment. Defendant did not receive the section 113—4(e) admonishments at arraignment or in the five hearings immediately thereafter which defendant attended. Defendant failed to attend the nine hearings immediately proceeding trial. Had defendant attended any of these latter hearings, the trial court could properly have given him the section 113—4(e) admonishments. These admonishments are designed to make defendant aware that he will lose his right to confront the witnesses against him if he fails to appear for trial. We will not allow defendant to benefit from his misconduct by manipulating a rule designed for his protection. We find that by voluntarily absenting himself from the pretrial hearings in this case, defendant has waived his right to object to the trial court's failure to admonish him under section 113—4(e). See *People v. Burns* (1983), 117 Ill. 3d 123, 130, 453 N.E.2d 21.

■ Defendant next contends that the State failed to show by substantial evidence that the defendant's absence from court was wilful. Section 115—4.1(a) of the Code of Criminal Procedure of 1963 provides in pertinent part that

"[w]hen a defendant after arraignment on an indictment or information charging him with a non-capital felony, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant. \*\*\*" (Ill. Rev. Stat. 1981, ch. 38, par. 115—4.1(a).)

Defendant contends that this provision requires something in the nature of a formal hearing at which the State must produce evidence that defendant's absence is wilful. Defendant is mistaken on this point. Section 115—4.1(a) requires neither a formal motion nor a formal hearing before a trial *in absentia* can proceed. (See *People v. Stanley* (1983), 116 Ill. App. 3d 532, 534-35, 452 N.E.2d 105.) If the record contains sufficient evidence to support a finding that defendant wilfully absented himself from trial, the "substantial evidence" requirement of section 115—4.1(a) will be deemed to have been satisfied. See *People v. Joyner* (1982), 109 Ill. App. 3d 1083, 1088, 441 N.E.2d 1214.

In the instant case, the record reveals that defendant missed nine hearing dates prior to trial and a certified letter was sent to defendant's last known address informing him of his trial date. These factors are a strong indication that defendant wilfully absented himself from trial. In *People v. Watson* (1982), 109 Ill. App. 3d 880, 883, 441 N.E.2d 152, the court stated that

"Rather than require the State to negate every possibility that a defendant's absence was not wilful, we hold that a *prima facie* case is established by showing that the statutory requirements have been complied with. Only if the defendant introduces some evidence that he did not act wilfully should more be required of the State." See also *People v. Joyner* (1982), 109 Ill. App. 3d 1083, 1088, 441 N.E.2d 1214.

The statutory requirements referred to by the court in *Watson* are that (1) defendant be advised that he could be tried *in absentia* if he failed to appear for trial, and (2) defendant be informed via certified letter of his trial date. (Ill. Rev. Stat. 1981, ch. 38, pars. 113—4(e), 115—4.1(a).) In the instant case, defendant waived his right to a pretrial admonishment regarding a trial *in absentia* and he was informed via certified letter of his trial date. Under the circumstances presented in this case, we find that the evidence established a *prima facie* case that defendant wilfully absented himself from trial. We find that the trial court's decision to proceed to try defendant *in absentia* was proper.

■ Defendant next contends that his convictions are based solely on inadmissible hearsay.

Defendant was convicted exclusively on the testimony of Officer Jenkins. Jenkins testified as to certain statements made to him by codefendant Meeks which implicated defendant in the instant narcotics transaction. Defendant contends that there was an insufficient foundation for the admission of Jenkins' hearsay testimony.

Both parties agree that if Jenkins' hearsay testimony is admissible, it comes in under the hearsay exception concerning statements by co-conspirators. (See E. Cleary and M. Graham, Handbook of Illinois Evidence sec. 802.10 (4th ed. 1984).) The existence of a conspiracy and defendant's involvement in it must be shown by evidence independent of the statements themselves. (See *People v. Jackson* (1977), 49 Ill. App. 3d 1018, 1020, 364 N.E.2d 975.) It is defendant's contention that there was insufficient independent evidence of defendant's involvement with the conspiracy to invoke the statements by co-conspirators exception to the hearsay rule.

We have reviewed the testimony of Officer Jenkins and we find that it provides a sufficient foundation for the admission of the statement of a co-conspirator to be used against defendant. Independent of Meeks' statements, Jenkins' testimony clearly serves as circumstantial evidence that a conspiracy to deliver heroin existed and that defendant was an integral part of that conspiracy. It is true that at trial there were several hearsay statements interspersed in Jenkins' testi-

mony which directly implicated defendant in the narcotics transaction. But it is not required that the independent evidence of the conspiracy be introduced prior to the admission of the co-conspirator's declaration. (See *People v. Goodman* (1980), 81 Ill. 2d 278, 284, 408 N.E.2d 215.) All that is required is that the State show a *prima facie* case of conspiracy, which it has done in the instant case. (See *People v. Gray* (1980), 85 Ill. App. 3d 726, 729, 410 N.E.2d 493.) We find that Officer Jenkins' testimony as to what Meeks told him about defendant's involvement in the instant narcotics transaction was admissible as the statement of a co-conspirator and served to prove defendant's guilt beyond a reasonable doubt.

■■ Finally, defendant contends that his sentence of two concurrent 15-year-terms was excessive and was an abuse of discretion by the trial judge. Defendant, who was sentenced *in absentia* was 22 years old at the time of the offenses in issue and had one prior conviction for criminal trespass to a vehicle. Defendant points out that the crimes in issue did not involve a weapon and were not violent and concludes that because his participation in the crimes in issue was "marginally sufficient to sustain a charge that he was an accountable participant or co-conspirator," his sentence should be reduced. However, the evidence indicates that defendant was an active participant in the narcotics transaction in issue and an integral part of the conspiracy. Contrary to defendant's assertion, it does not appear that defendant's "peripheral" involvement in the crimes in issue warrants a reduction of defendant's sentence. Moreover, the sentence imposed was well within the statutory range. The crime of which defendant was convicted is a Class X felony. (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(1).) The sentence for a Class X felony shall be not less than six nor more than 30 years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(3).) Defendant's sentence of 15 years falls well within this range.

It is clear that, under the circumstances presented, the court would have been justified in imposing a much harsher sentence. Section 411 of the Controlled Substances Act sets forth several examples of the type of offenses that the legislature "deems most damaging to the peace and welfare of the citizens of Illinois and which warrants the most severe penalties." (Ill. Rev. Stat. 1981, ch. 56½, par. 1411.) Included among the most damaging offenses is the possession and sale of heroin (see Ill. Rev. Stat. 1981, ch. 56½, pars. 1401(a), 1204(c)(2)) of which defendant was convicted. In the instant case, the sentencing judge elected not to impose the most severe penalty allowed by law. This decision was within the sentencing judge's discre-

tion and will not be disturbed on appeal. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

For the reasons expressed herein, the judgment of the circuit court is affirmed. Accordingly, the State's request for the costs of defending this appeal is granted and defendant is hereby ordered to pay $50 in costs to the State. See *People v. Nicholls* (1978), 71 Ill. 2d 166, 178, 374 N.E.2d 194.

Affirmed.

DOWNING and PERLIN, JJ., concur.