THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES HARRIS, Defendant-Appellant.

First District (2nd Division)   No. 81—310

Opinion filed March 29, 1983.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and David A. Shapiro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:
Following a bench trial, defendant, James Harris, was found

guilty of robbery and aggravated battery and sentenced to serve concurrent terms of five and four years, respectively. The issues raised on appeal include whether: the report written by the examining psychiatrist failed to meet statutory requirements; the court abused its discretion in not conducting a fitness hearing; and prosecutorial cross-examination of defense witnesses deprived defendant of a fair trial.

For the reasons hereinafter stated, we reverse defendant's convictions, and remand the cause with directions to conduct a hearing for the purpose of determining his fitness to stand trial.

At trial, the victim, Santos Davile, testified that at about 9 p.m. on February 25, 1980, he went to a bar located on Belmont and Clark, in Chicago. He bought two beers for two or three women who approached him. At about 3 or 4 a.m. he left the bar with his friend Julio Sanchez. As they were walking toward Sanchez' car, defendant, another man, and a woman grabbed him. Defendant hit him and took two wallets from him. He was knocked down and struck in the right eye. He had seen both men earlier that evening in the bar.

Investigator John Putney stated that on the morning of February 25, 1980, he interviewed defendant, who told him, essentially, that he had participated in the beating and robbing of the victim.

Roy Lewis testified for defendant. Lewis had been charged in the same information as defendant and pled guilty to robbery for which he received a four-year sentence. Lewis went to the bar in question and met two girls, Cathy and Tina. Cathy told him that the guy she was sitting next to had "a nice piece of paper on him." She suggested that they "cop him outside." He called defendant by telephone and told him that he was getting ready to make some money and to meet Lewis on Belmont. He, Cathy, Tina and the victim left the bar together. When they got to the alley, Lewis put the victim's "lights out." While they were trying to get into the victim's pockets, Cathy ran away. Defendant did not participate in the incident. Tina and Lewis began walking east toward Belmont. When defendant was within 15 feet of them, the police arrived and all three were arrested. Lewis admitted that he had lived in the same building as defendant for many years and that they were good friends.

Defendant testified on his own behalf. On February 25, 1980, he received a telephone call from Lewis telling him to go to Belmont and Clark. Defendant changed clothes, took the "el" to the north side, and walked from the "el" station to Belmont and Clark. After about five or 10 minutes, he saw Lewis and a girl down the street. He started walking towards them. When he got close to Lewis, the police came and put him "up against the wall." He never told any police in-

vestigator, including Putney, that he punched the victim and took the victim's wallet.

The circuit court found defendant guilty of aggravated battery and robbery and he was sentenced as first noted.

## I

■ Defendant's notice of appeal was untimely filed on January 30, 1981, approximately 2½ months subsequent to the imposition of his sentence. In his petition for a writ of error *coram nobis*, filed January 12, 1981, defendant alleged, *inter alia*, that his court appointed attorney failed to file a timely appeal after defendant had so requested. The State concedes that defendant was not to blame for the untimeliness of the notice of appeal and that the appeal should not be dismissed. Both parties have filed briefs on the merits of the controversy. Under these circumstances, upon authority of Supreme Court Rule 606(c) (87 Ill. 2d R. 606(c)), we elect to consider defendant's late appeal on its merits. *People v. Williams* (1974), 59 Ill. 2d 243, 320 N.E.2d 13; *People v. Brown* (1973), 54 Ill. 2d 25, 294 N.E.2d 267.

## II

Defendant contends that the circuit court's failure to conduct a hearing to determine his fitness to stand trial deprived him of due process of law. Due process is violated when one is required to defend himself at trial but is not competent to do so. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836; *People v. McLain* (1967), 37 Ill. 2d 173, 226 N.E.2d 21.) In the present case, neither party questioned defendant's fitness to stand trial at anytime before or during the trial. On October 14, 1980, at an intended sentencing hearing, defense counsel advised the court that defendant was unavailable because "*** he had eaten some metal and glass and other things *** and attempted suicide both before and after his trial." On that date, pursuant to the request of the director of Cermak Jail, defense counsel moved that defendant be given a psychiatric examination because of his suicide attempts. Such an order was entered but was limited to the question of whether or not defendant was mentally fit to participate in the sentencing process. The report filed by the psychiatrist was so limited as well. In the presentence social investigation report filed after trial, it was revealed that: defendant had been treated as an out-patient of Chicago Mental Health Clinic as a child; he had been treated as an in-patient at the Read-Zone Center for two years; his 1980 release from the penitentiary was conditioned on his obtaining out-patient therapy, which was never secured; and on

September 10, 1980, after trial, he was "*** put in restraints due to some form of acting out." Nothing in the record discloses the onset, diagnosis, prognosis or effect of defendant's mental condition or its possible relevance to his fitness to stand trial or to be sentenced.

■ Once facts are brought to the attention of the circuit court which raise a *bona fide* doubt of defendant's fitness to stand trial, the court must hold a fitness hearing because of the fundamental constitutional nature of the fitness requirement. (*People v. Murphy* (1978), 72 Ill. 2d 421, 430, 381 N.E.2d 677; Ill. Rev. Stat. 1981, ch. 38, par. 104—11.) Where it is shown that at the time of trial certain facts existed which, had they been known to the circuit court at the time of trial, would have raised that *bona fide* doubt, defendant is entitled to post-conviction relief.[1] (*People v. McLain; People v. Andson* (1979), 73 Ill. App. 3d 700, 392 N.E.2d 358.) Although the question of whether a *bona fide* doubt has been raised as to defendant's competency is usually within the discretion of the circuit court (*People v. Stanhope* (1969), 44 Ill. 2d 173, 179, 254 N.E.2d 512), under the circumstances presented by this record, we are of the opinion that the circuit court should have ordered a hearing relative to defendant's fitness to stand trial as part of that ordered to determine his mental fitness for sentencing.

■ The courts have recognized the hazards inherent in retrospective competency hearings. (See *Drope v. Missouri* (1975), 420 U.S. 162, 182, 43 L. Ed. 2d 103, 119, 95 S. Ct. 896, 909; *Pate v. Robinson; People v. McLain.*) Some Federal cases have held, however, that the mere passage of time may not constitute an insurmountable obstacle if there is sufficient evidence in the record derived from knowledge contemporaneous to trial. (*United States ex rel. Bilyew v. Franzen* (7th Cir. 1982), 686 F.2d 1238, 1247; *United States v. Makris* (5th Cir. 1976), 535 F.2d 899, 904-05, *cert. denied* (1977), 430 U.S. 954, 52 L. Ed. 2d 394, 97 S. Ct. 1707; *Conner v. Wingo* (6th Cir. 1970), 429 F.2d 630, *cert. denied* (1972), 406 U.S. 921, 32 L. Ed. 2d 121, 92 S. Ct. 1779.) The foregoing approach has not been considered in Illinois State courts as yet. (*People v. McLain; People v. Thomas* (1969), 43 Ill. 2d 328, 253 N.E.2d 431; *People v. Stanhope; People v. Turner* (1980), 88 Ill. App. 3d 793, 410 N.E.2d 1151; *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909.) The salutary effect of judicial

---

[1]This appeal was commenced upon a petition for writ of error *coram nobis*, a procedure which has been utilized in pursuing post-conviction relief. As noted in point I, we elected to treat this as a delayed appeal permitted under Supreme Court Rule 606(c); however, we regard this point of law, usually raised in post-conviction cases, as properly before us here.

economy, trial costs to both parties, stability of judgments and elimination of evidentiary problems related to retrial make the Federal approach worthy of consideration here. In the present case, however, we take judicial notice that the trial judge is deceased. His role in retrospective review would have been vital since he presided throughout the trial and was in the best position to observe and recall defendant's demeanor. In his absence, we believe that we are obligated to reverse and remand for a new trial.

### III

■ Certain issues raised in this appeal may again arise in the retrial of the case, and we consider them here for that reason. Defendant maintains that the psychiatric report as to his fitness for sentencing failed to comply with the statutory requirements. (Ill. Rev. Stat. 1981, ch. 38, par. 104—15(a).) Section 104—15(a) provides that a fitness report issued pursuant to court order under section 104—13(a) (Ill. Rev. Stat. 1981, ch. 38, par. 104—13(a)) include not only diagnosis and an explanation as to how it was reached, and the facts upon which it is based, but also a description of his mental or physical disability, if any; its severity; and an opinion as to whether and to what extent it impairs defendant's ability to understand the nature and purpose of the proceedings against him or to assist in his defense, or both. Here, the report received by the circuit court at defendant's sentencing hearing at 10 a.m. on November 5, 1980, from a staff psychiatrist at the Psychiatric Institute stated:

> "Pursuant to Your Honor's Order, the undersigned psychiatrist examined the above defendant [Harris] on Wednesday, November 5, 1980.
>
> Based on the above examination, it is my opinion that this defendant is Mentally Fit for Sentencing. He understands the nature of the charge pending against him, the purpose of the proceedings and is able to assist counsel in aggravation and mitigation proceedings, if he so wishes."

The report failed to comport with the requirements of law. It failed to render "an explanation as to how [the diagnosis] was reached and the facts upon which it [was] based." (Ill. Rev. Stat. 1981, ch. 38, par. 104—15(a)(1).) Its conclusory terms precluded the circuit court from independently evaluating its validity and hampered the court's ability to assess the need or lack thereof of a fitness hearing. Further, the psychiatric examination was apparently hastily performed on the last permissible day. The court possessed the report at defendant's sentencing hearing at 10 a.m. on the same morning the examination was

conducted.

The State argues that this issue has been waived by defendant's failure to object to the sufficiency of the report at the sentencing hearing. Section 104—11(a) expressly provides that the issue of defendant's fitness may be raised by the defense or State at any appropriate time before, during or after trial. (Ill. Rev. Stat. 1981, ch. 38, par. 104—11(a).) When the circuit court in the proper exercise of its discretion orders a psychiatric examination of defendant, it undertakes a concomitant duty to insure that the resultant report fulfills the requirements of section 104—15(a). Otherwise, the purpose of the statute would be defeated and the substance of the examiner's recommendations would not be amenable to independent judicial scrutiny. Under the circumstances of this case, the error was not harmless, as the State contends. As previously noted, defendant had a history of therapeutic treatment, and recently attempted to commit suicide. These facts underscore the importance of statutory compliance.

Other points of error raised involve alleged prosecutorial misconduct. Although the errors complained of were insufficient upon which to grant a new trial in and of themselves, we trust that the conduct referred to will not be repeated on retrial of the case.

For the foregoing reasons, defendant's convictions are reversed and the cause remanded for a new trial.

Reversed and remanded for new trial.

DOWNING, P.J., and PERLIN, J., concur.