THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SANTIAGO LABOY-RIVERA *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 82—2231, 83—176 cons.

Opinion filed June 29, 1984.—Rehearing denied August 9, 1984.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant Santiago Laboy-Rivera.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant Juan Andino.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Timothy J. Joyce, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Defendants Santiago Laboy-Rivera (Rivera) and Juan Andino (Andino) were tried simultaneously before a jury and found guilty of murder, armed robbery and armed violence. Rivera was sentenced to concurrent terms of 50 years for three counts of murder, three counts of armed robbery and armed violence. Andino was sentenced to concurrent terms of 55 years for each conviction.

On appeal, Rivera contends that (1) the trial court erred in denying his motion for severance, and (2) his sentence for felony murder is excessive due to his passive participation in the crime and because it was based on factors inherent in any felony murder. Andino contends

that (1) his convictions should be reversed and the cause remanded for a new fitness examination because the psychiatric report as to his competency to stand trial failed to comply with statutory requirements; (2) the improper exclusion of two veniremen because they were opposed to the imposition of the death penalty resulted in a jury which was unrepresentative of the community and which was inherently biased and prone to convict; and (3) his extended-term sentence is excessive because the offense was not accompanied by brutal behavior indicative of wanton cruelty.

Defendants jointly contend that (1) their concurrent extended-term sentences for armed robbery are improper, and (2) their convictions for armed violence and two counts of murder must be vacated.

We affirm in part, reverse in part.

The charges arose from the fatal stabbing of William Klein on July 20, 1981. Neither defendant contends that his guilt was not established. Therefore, we set forth only the facts relevant to our disposition of the issues presented.

Jose Lessale testified that he was sleeping in his basement apartment when he was awakened by noises at 2:30 a.m. on July 20, 1981. He looked out the window and saw Andino standing in front of Klein with a knife in his hand. Lessale further testified that he saw Andino stab Klein repeatedly while Klein was being restrained by Rivera. He immediately called the police. Afterwards, he noticed Andino wipe the blood from his knife and put it in his pocket. Both defendants fled from the scene.

The following day, Lessale saw Rivera walking along Sheridan Road and phoned police. Rivera was taken into custody, where he was interviewed by Detective Robert Elmore. At trial, Elmore testified as to the contents of Rivera's post-arrest statement. According to Elmore, Rivera stated that he and Andino were walking down the street when they saw Klein sitting on the stoop of an apartment building drinking beer. Andino asked him for a beer. Andino grabbed Klein and demanded his money. While Rivera held Klein, Andino searched his pockets and removed his money. When Klein began to struggle, Andino stabbed him. Both he and Rivera ran from the scene and split the proceeds. Twenty dollars was recovered from Rivera.

Andino was also taken into custody, where he was questioned by Detective Robert O'Leary. O'Leary testified that during the interview Andino revealed that he and Rivera spotted Klein and discussed robbing him. As they approached him, Rivera walked behind Klein and put him into a headlock. Andino asked Klein for his money, searched his pockets and removed his money—about $80. According to O'Leary,

Andino admitted stabbing Klein several times. Thereafter, Rivera took Klein's watch and both defendants ran from the scene.

Rivera testified on his own behalf at trial. On July 20, 1981, he and Andino were walking down Sheridan Road when they saw Klein sitting in front of an apartment building. Andino approached Klein and asked him, "Where is the money you owe me?" An argument ensued. Rivera admitted that he tried to restrain Klein but asserted that he was unable to do so. Klein lunged toward Andino. Rivera saw a knife in Andino's hand and tried unsuccessfully to push Klein away. Andino stabbed Klein. After he and Andino ran from the scene, Andino suggested that they go to his house and split the money.

Andino also testified that on July 19, 1981, he met Rivera at Sheridan and Cuyler at about 1:30 p.m. They drank beer, smoked marijuana and took some LSD. Andino testified that he was still under the influence of the drugs several hours later when Rivera suggested that they take Klein's money. The two men went over to Klein, and Rivera grabbed him from behind and put him into a headlock. Andino went through his pockets and took his money. When Andino started walking away, Klein grabbed him. Andino stabbed him and Klein fell to the ground with blood all over him. Andino further testified that he did not intend to stab or kill Klein. In fact, he was unaware at the time that he had actually stabbed Klein. He also stated he saw Rivera take a watch from Klein, who was lying on the ground. Later, Andino gave Rivera half the money he had taken.

Following closing argument and instructions to the jury, both defendants were found guilty of murder, armed robbery and armed violence. After a death penalty hearing with respect to Andino, the jury was unable to unanimously agree that there were no mitigating factors sufficient to preclude the imposition of the death penalty. Both defendants were thereafter sentenced to terms in the penitentiary.

■ First, Rivera contends that the trial court improperly denied his motion for severance. Prior to trial, Rivera moved for a severance on the grounds that Andino's post-arrest statement implicated him. He also alleged that his defense would be antagonistic to that of his codefendant's. This motion was denied. Rivera further contends that he was prejudiced by the trial court's refusal to sever the case from Andino's when the State indicated that it intended to seek the death penalty against Andino. However, at the hearing on the motion, the State argued that Rivera might be eligible for the death penalty, depending on how the evidence unfolded. The court ruled that Rivera's request for severance was premature and again denied Rivera's motion.

As a general rule, severance should be granted only where the defenses of the codefendants are so antagonistic that a fair trial cannot be assured without severance. (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 453 N.E.2d 849.) It is incumbent upon the defendant seeking the severance to make a specific showing, prior to trial, that he will be prejudiced by a joint trial. (*People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759.) The defendant must demonstrate that he and his codefendant have truly conflicting and antagonistic defenses marked by opposition, hostility or discord. Mere apprehension that the defenses may prove antagonistic is insufficient. (*People v. Cart* (1981), 102 Ill. App. 3d 173, 429 N.E.2d 553; *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) The decision as to whether severance should be granted rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.

We find that Rivera failed to point out specific aspects of Andino's defense that would be antagonistic to his. In Rivera's amended motion for severance, he outlined what his anticipated defense would be. He stated that although he was present at the scene of the crime, he had no intention of robbing or killing Klein. Furthermore, he alleged that he did not take part in the robbery or murder. Rivera's motion also included allegations that he believed his codefendant's defense would be that Andino was not present at the scene and took no part in the robbery and murder. Finally, he alleged that Andino's post-arrest statement implicated him. During the hearing, Andino's counsel initially stated that his client's defense would be similar to that of Rivera's. However, he subsequently indicated that Andino would not deny that he was present at the scene, contrary to Rivera's representations. Although Andino's attorney stated that they would "point the finger" at Rivera and attempt to establish that Andino did not perpetrate the robbery, no facts were put forth to support this assertion.

The instant case is analogous to *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461, wherein the defendant moving for a severance claimed that his codefendants had made statements that the State would use against him at trial and that their defenses were antagonistic to his. He also argued, as did Rivera in the instant case, that he believed his codefendants' testimony would implicate him. In upholding the trial court's denial of defendant's motion for severance, the supreme court stated that there was no showing before trial that the codefendants' defenses were antagonistic. Without a detailed and specific showing of antagonism, the court noted, there was no basis on which the trial judge could determine if defendant would be preju-

diced. Here, as in *Lee*, the conclusionary assertions made by Rivera are no substitute for a detailed recitation of what the codefendant's defense could be and how it conflicted with his. We find that the trial court did not abuse its discretion in denying Rivera's motion for severance. Moreover, Rivera's failure to demonstrate the prejudice which he would have suffered from a joint trial, combined with the independent evidence establishing his guilt, negated the necessity for severance. *People v. Guyon* (1983), 117 Ill. App. 3d 522, 453 N.E.2d 849.

Next, Rivera contends that the trial court improperly imposed an extended-term sentence of 50 years' imprisonment. Rivera argues that the sentence is excessive because it was based on factors inherent in any felony murder and because his allegedly passive participation in the crime mitigated the seriousness of his offense. We reject both arguments.

It is firmly established that a trial court's decision regarding sentencing will not be altered absent a clear abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Childs* (1981), 95 Ill. App. 3d 606, 420 N.E.2d 513.) While Supreme Court Rule 615(b)(4) grants reviewing courts the power to reduce the trial court's sentence (87 Ill. 2d R. 615(b)(4)), that power must be exercised cautiously because the trial judge is in a better position to assess and weigh all the factors relevant to the sentence. (*People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490; *People v. Childs* (1981), 95 Ill. App. 3d 606, 420 N.E.2d 513.) Finally, in evaluating the brutality and heinousness of the offense, the trial judge must analyze the entire spectrum of facts surrounding the incident. *People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823.

Our review of the record reveals that the trial judge reached its decision after properly considering the respective roles of the codefendants, the seriousness of the crime and the exceptionally brutal nature of the attack. The evidence establishes that Andino stabbed the victim seven times while Rivera restrained him. Before pronouncement of the sentence, the court commented on the brutality of the offense "*** you [Rivera] showed no mercy to William Kline [*sic*] when you paralyzed his body so that the repeated thrusts of your co-assistant could end the life of William Kline [*sic*], whose only crime was living ***." This court has repeatedly held that multiple stabbings are indicative of wanton cruelty. (*People v. Childs* (1981), 95 Ill. App. 3d 606, 420 N.E.2d 513; *People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823.) We find that the record clearly supports the trial judge's determination that Rivera's conduct in the instant of-

fense justifies the imposition of an extended-term sentence. Accordingly, Rivera's 50-year sentence should not be reduced.

■ We now turn to the issues raised by defendant Andino. He first contends that the psychiatric report as to his fitness to stand trial failed to comply with statutory requirements. (Ill. Rev. Stat. 1981, ch. 38, par. 104–15(a).) Relying on *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941, Andino argues that due to the report's insufficiency, the trial judge was unable to determine whether a *bona fide* doubt as to defendant's fitness to stand trial existed, requiring reversal.

Due process is violated when one is required to stand trial when he is not competent to do so. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836; *People v. Green* (1983), 116 Ill. App. 3d 815, 452 N.E.2d 767.) A defendant is unfit to stand trial if he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1981, ch. 38, par. 104–10; *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Once a *bona fide* doubt as to defendant's fitness to stand trial is raised, the court must hold a fitness hearing to determine whether defendant is competent. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Whether a *bona fide* doubt has been raised is a decision resting largely with the discretion of the trial court. *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Green* (1983), 116 Ill. App. 3d 815, 452 N.E.2d 767.

In the present case the trial court ordered, at defense counsel's request, that Andino be examined by a psychiatrist regarding his fitness to stand trial. Following his examination of defendant, a staff psychiatrist from the Psychiatric Institute of the circuit court of Cook County submitted his findings to the trial court which, read as follows:

"Pursuant to Your Honor's Order, the undersigned psychiatrist examined the above defendant on November 9, 1981.

Based on the above examination, it is my opinion that this defendant is Mentally Fit for trial. He is able to understand the nature of the charge pending against him, and able to cooperate with counsel in his defense.

Based on the above examination, it is my opinion that at the time of the alleged offense, this defendant was Legally Sane. It is my opinion he was able to appreciate the criminality of his act, and able to conform his conduct to the requirements of the law."

This report is virtually identical to the one received by the circuit

court in *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941. In *Harris*, this court held that the report did not comply with the requirements of section 104—15(a)(1) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—15(a)(1)). It failed to render an explanation as to how the diagnosis was reached and the facts upon which it was based. Furthermore, its conclusional terms precluded the trial court from evaluating independently its validity and thereby restricted the court's ability to determine the necessity of a fitness hearing. *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941.

However, this case is distinguishable from *Harris* on its facts. The defendant in *Harris* had a history of therapeutic treatment. Additionally, he was unavailable for the sentencing hearing because he had attempted suicide by eating metal and glass. The court concluded that the trial court erred by refusing to order a competency hearing in reliance on a psychiatric report which did not fulfill the requirements of section 104—15(a). The error was not harmless because the *bona fide* doubt as to defendant's fitness to stand trial existed, which underscored the importance of statutory compliance. *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941.

In the instant case, defense counsel never presented the court with facts which would indicate that defendant was not fit to stand trial. It is presumed that defense counsel would have informed the trial court if he believed defendant did not understand the proceedings or was unable to assist in his own defense. (*People v. Jones* (1982), 109 Ill. App. 3d 120, 440 N.E.2d 261.) Moreover, the record is devoid of facts which raise a *bona fide* doubt as to defendant's competency. The transcript of the trial and post-trial sentencing hearing indicates that defendant conducted himself in a coherent manner throughout the proceedings. (*People v. Jones* (1982), 109 Ill. App. 3d 120, 440 N.E.2d 261.) His answers were lucid and articulate and demonstrated that defendant had an understanding of the nature of the proceedings. (*People v. Bivens* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044.) Under these circumstances, any error which occurred as a result of the trial court's failure to insure that the psychiatric report complied with the requirements of section 104—15(a) was harmless.

■ Second, Andino contends that his conviction should be reversed because the exclusion of prospective jurors opposed to the death penalty resulted in a conviction-prone jury and violated his right to be tried by a jury representative of the community. In Illinois, it is now well established that this argument is meritless. *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346, *cert. denied* (1982), 456

U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307; *People v. Newsome* (1982), 110 Ill. App. 3d 1043, 443 N.E.2d 634; *People v. Hamilton* (1981), 100 Ill. App. 3d 942, 427 N.E.2d 388, *appeal denied* (1982), 91 Ill. 2d 554.

■ Third, Andino argues, as does his codefendant, that his extended-term sentence is excessive because the crime was not accompanied by exceptionally brutal conduct. Our prior analysis and disposition of this issue is applicable here. Additionally, the record reflects that the trial judge properly considered the totality of factors surrounding the incident, including the fact that the jury unanimously found that an aggravating factor existed which permitted the imposition of the death penalty before imposing an extended-term sentence of 55 years. Accordingly, we affirm Andino's sentence.

■ Both defendants contend that the trial court erred in imposing extended-term sentences for the less serious offense of armed robbery in violation of section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2). Defendants already received extended-term sentences for murder, the most serious offense for which they were convicted. We are cognizant of the fact that this question currently awaits resolution by our supreme court. (See *People v. Jordan* (1983), 114 Ill. App. 3d 16, 448 N.E.2d 237, *appeal allowed* (1984), 96 Ill. 2d 546; *People v. Rowe* (1983), 115 Ill. App. 3d 322, 450 N.E.2d 804, *appeal allowed* (1984), 96 Ill. 2d 548.) We choose to follow *People v. Mims* (1982), 111 Ill. App. 3d 814, 444 N.E.2d 684, until such time as the supreme court resolves this issue. In *Mims*, the court found the trial court's extended-term sentence for armed robbery was proper under section 5—8—2, notwithstanding the fact that defendant also received an extended-term sentence for murder. Therefore, we hold that the trial court did not err in imposing extended-term sentences for defendants' armed robbery convictions.

■ Finally, both defendants contend that their armed violence convictions and two of their three murder convictions must be vacated. We agree.

Under *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges. Each of defendants' convictions for armed violence is based on a predicate offense, either murder or armed robbery, and must be vacated. Also, two of each of defendants' three murder convictions must be vacated because they arose from one act. *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.

For the reasons stated above, defendants' convictions and senten-

ces for murder and armed robbery are affirmed. Defendants' convictions for armed violence and two counts of murder are reversed and their sentences vacated.

Judgments affirmed in part, reversed in part.

BUCKLEY, P.J., and CAMPBELL, J., concur.