NOTICE

Decision filed 03/12/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241207-U

NO. 5-24-1207

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 22-CF-567 |
| | ) | |
| ROBERT HOAKS, | ) | Honorable |
| | ) | Robert E. McIntire, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*: We grant appellate counsel's motion to withdraw and affirm the order of the trial court finding the defendant unfit to stand trial where the court's finding was supported by the evidence and there are no arguably meritorious claims counsel can make on the defendant's behalf.

¶ 2    The defendant, Robert Hoaks, appeals an order of the Vermilion County circuit court finding him unfit to stand trial. The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant in this appeal. OSAD has filed a motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there are no arguably meritorious claims counsel can raise on the defendant's behalf after considering the following issues: (1) whether the trial court's finding of unfitness was against the manifest weight of the evidence, (2) whether the fitness report comported with statutory requirements, (3) whether the defendant

1

was denied the right to have a jury determine the question of his fitness to stand trial, (4) whether the fitness hearing was timely, and (5) whether trial counsel provided ineffective assistance. Upon review, we grant OSAD's motion to withdraw and affirm the order of the trial court.

¶ 3                                   I. BACKGROUND

¶ 4     On October 28, 2022, the State charged the defendant with one count of threatening a public official (720 ILCS 5/12-9(a) (West 2020)) and one count of disorderly conduct (*id.* § 26-1(a)(1)). The charges stem from two incidents that occurred on August 2, 2022. First, the defendant threatened to kill Danville, Illinois, mayor Rickey Williams Jr. While being arrested shortly thereafter, the defendant told Williams, "I'm going to kick your teeth out."

¶ 5     At a June 17, 2024, status hearing, defense counsel informed the court that he became aware of a fitness report in another case pending against the defendant (Vermilion County case No. 21-CM-471). Counsel stated that, based upon that report, he intended to file a motion to request a fitness hearing in this case. The State's attorney noted that the report was prepared in 2022 and suggested obtaining a current psychological evaluation. Defense counsel agreed to arrange an evaluation. After the hearing, the trial court entered a written order for psychological or psychiatric evaluation, appointing clinical psychologist Dr. David Coleman, Ph.D., to examine the defendant.

¶ 6     The question of the fitness evaluation was addressed at the next status hearing on August 5, 2024. Defense counsel indicated that an appointment had been scheduled and counsel would "have a conversation" about it with the defendant after the hearing. A docket entry that date indicates that the court ordered the defendant to complete the evaluation.

¶ 7     Dr. Coleman examined the defendant on August 16, 2024. His report notes that the defendant failed to appear for an earlier appointment. However, it does not specify when the

previous appointment was to take place. Although Dr. Coleman's report was dated August 30, 2024, it was not filed with the court until October 15, 2024.

¶ 8     In his report, Dr. Coleman first noted that he previously examined the defendant pursuant to an order for a fitness evaluation in Vermilion County case No. 21-CM-471. He tendered a report of his evaluation to the court; however, he stated that a review of the docket in that case indicated the court did not hold a fitness hearing.

¶ 9     Dr. Coleman's report next described the interview conducted with the defendant for purposes of evaluating his fitness in this case. The defendant's fingers and fingernails were "very dirty," and there were tremors in his hands and arms. In addition, the defendant was frustrated and irritable after waiting 45 minutes for Dr. Coleman to arrive for the evaluation due to confusion about the scheduled start time.

¶ 10    The report described the defendant's speech as "loud, pressured, irritable, and disorganized" and noted that he made several irrelevant, delusional, and inconsistent statements. For example, upon entering the room where the evaluation took place, the defendant stated, "The Mayor of Danville stole two digits and five zeros from me." He also accused the mayor of killing his attorney and the attorney's assistant. In addition, the defendant said, "They gave me a couple of restraining orders." When asked who "they" were, he did not know. Regarding the fitness evaluation report in Vermilion County case No. 21-CM-471, the defendant said, "I read the first report that says I'm incompetent, but I'm a long way from that."

¶ 11    Dr. Coleman asked the defendant about Vermilion County case No. 21-CM-471, which involved allegations that the defendant threatened a man with a knife and accused the man of raping the defendant's wife. In response, the defendant said, "If I had got in anybody's face with

3

a knife, I would have cut them." In addition, he said, "I never told nobody about any rape … My wife said they invaded my house."

¶ 12 When asked about the charges in the instant case, the defendant told Dr. Coleman, "I never threatened to kill nobody … it was my partner." He indicated that a witness could confirm this. When asked why the police report did not mention a witness, the defendant explained that the witness put her head down, and that the officer never saw her. According to the report, the defendant then became angry and "continued to rant loudly, including about how his property and income were taken from him, how he wanted to beat the Mayor's ass, and how he was fit to stand trial." Dr. Coleman concluded his evaluation at this point, explaining that "it was apparent that Mr. Hoaks was unable to engage in standardized testing, due to his irritability, racing thoughts, flights of ideas, and resistance to questioning."

¶ 13 Dr. Coleman's report also contains a summary of the information gleaned from his previous evaluation of the defendant, which was conducted in April 2022. At that time, the defendant indicated that he was an "equipment overhaul specialist" and stated that a bank shut down his business and unspecified individuals stole his equipment pursuant to the orders of "the Judge that the Mayor killed." During the previous evaluation, the defendant also stated that he had been married for 30 years despite an earlier claim that his wife died.

¶ 14 During the 2022 evaluation, Dr. Coleman administered the Wechsler Adult Intelligence Scale Third Edition (WAIS-III) to the defendant. The defendant's scaled scores in two of the test's categories were in the impaired range, but Dr. Coleman was unable to determine scores for the defendant in any other categories. Dr. Coleman was not able to administer the WAIS-III during the 2024 evaluation because the defendant was unable to focus on structured questions. He noted

4

in his report that the defendant was "even less able to give focused and rational responses" during the 2024 evaluation than he was during the 2022 evaluation.

¶ 15    During the 2022 evaluation, Dr. Coleman also attempted to administer the MacArthur Competence Assessment Tool-Criminal Adjudication (MacCAT-CA), an interview tool used to assess three areas of ability to function in a criminal trial. The test assesses an individual's current understanding of the judicial system, reasoning ability, and ability to appreciate the individual's situation, as well as the individual's ability to learn these three facets. In the 2022 evaluation, the defendant provided "rambling and frequently irrelevant answers to most questions." Dr. Coleman was unable to attempt to administer the MacCAT-CA during the 2024 evaluation due to the defendant's hostility and irrationality.

¶ 16    Based upon these observations, Dr. Coleman diagnosed the defendant with schizophrenia and mild intellectual impairment. He also indicated the need to rule out a traumatic brain injury due to the defendant's claim that he underwent a "total frontal lobe reconstruction" after being struck by a "hydraulic machine."

¶ 17    Dr. Coleman recommended that the defendant be found not to meet the conditions for fitness to stand trial. He explained that the defendant (1) did not demonstrate an ability to discuss and understand relevant components of the legal system, such as the roles of the judge and attorneys and the process of negotiating a plea agreement; (2) did not demonstrate an ability to make reasoned decisions or aid his attorney in his defense; and (3) was not able to appreciate his circumstances, make decisions on matters such as how to plead, effectively communicate with his attorney, or keep his composure in court. Dr. Coleman opined that the defendant was likely "to give hostile, rambling[,] and sometimes irrelevant responses if allowed to speak during court

5

appearances." As such, he recommended that the defendant allow his attorney to speak for him instead whenever possible.

¶ 18    Regarding an appropriate course of treatment, Dr. Coleman opined that treatment in a secure facility was likely necessary due to the defendant's "lack of insight into his mental health condition." He noted that "treatment including medication could be mandated if needed." Dr. Coleman further recommended that when and if the defendant were returned to the community, he be provided with some supervision to ensure compliance with medication and other treatment protocols, such as through supervised living, case management, or mental health court.

¶ 19    Finally, Dr. Coleman opined that the defendant could attain fitness to stand trial within one year to a reasonable degree of clinical certainty. He explained that the symptoms exhibited by the defendant "typically respond to medication." In addition, he explained that the defendant's intellectual functioning was already "at least marginally adequate" for fitness to stand trial and was likely to improve somewhat with the reduction in psychotic symptoms.

¶ 20    At a September 16, 2024, status hearing, defense counsel informed the court that he had received Dr. Coleman's report, which counsel would provide to the court that day. The court set the matter for a fitness hearing.

¶ 21    The fitness hearing took place on October 9, 2024. Both parties stipulated that Dr. Coleman would testify in accordance with his report, and the court accepted their stipulation. The court then asked for a copy of the report. Ruling from the bench, the court stated as follows: "Based on the stipulation and based on my examination of the stipulated report, I conclude independently that Mr. Hoaks, at this time, is unfit, but that there is a likelihood that he will attain fitness within one year, if provided with a course of treatment."

¶ 22 The court entered a written order on fitness that day. The court found that the defendant was presently unfit to stand trial pursuant to section 104-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-10 (West 2022)). The court further found that he was likely to be restored to fitness within one year. The court ordered the defendant committed to the custody of the Department of Human Services for treatment.

¶ 23 The defendant filed this timely appeal on November 8, 2024. OSAD filed a motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967), on July 25, 2025. This court entered an order granting the defendant until August 28, 2025, to file any *pro se* briefs, memoranda, or other documents showing why his appeal has merit. The defendant did not file a response within the time allotted.

¶ 24                                II. ANALYSIS

¶ 25 In a memorandum supporting OSAD's motion to withdraw, the attorney assigned to represent the defendant in this appeal states that she considered raising the following issues: (1) whether the trial court's finding of unfitness was against the manifest weight of the evidence, (2) whether Dr. Coleman's report comported with statutory requirements, (3) whether the defendant was denied the right to have a jury determine the question of his fitness, (4) whether the fitness hearing was timely, and (5) whether trial counsel provided ineffective assistance. However, appellate counsel concluded that any claim of error with respect to each of these issues lacks merit. Upon review, we agree.

¶ 26                    A. Manifest Weight of the Evidence

¶ 27 Prosecution of a defendant who is not fit to stand trial constitutes a violation of due process. *People v. Easley*, 192 Ill. 2d 307, 318 (2000); *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 48. The constitutional standard for fitness is "whether a defendant has a rational as well as factual

7

understanding of the proceedings and a sufficient present ability to consult with counsel to a reasonable degree of rational understanding." *Finlaw*, 2023 IL App (4th) 220797, ¶ 48 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)).

¶ 28 In Illinois, all criminal defendants are presumed to be fit to stand trial. *Id.* ¶ 49. A defendant will be found unfit only if, "because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2022). Determining whether this standard is met depends on the totality of the circumstances. *People v. Stahl*, 2014 IL 115804, ¶¶ 26, 39. However, fitness to stand trial encompasses only the defendant's ability to function within the context of a criminal trial, not his sanity or mental competence in other areas. *Easley*, 192 Ill. 2d at 320. A defendant may be found fit even if his mind is otherwise unsound. *Id.*

¶ 29 The trial court should play an active rather than passive role in the fitness proceedings. *Finlaw*, 2023 IL App (4th) 220797, ¶ 50; *People v. Corbett*, 2022 IL App (2d) 200025, ¶ 56. The court may consider the stipulated testimony of an expert in assessing the defendant's fitness, as the court did here, but it must not rely solely on a stipulation to the expert's conclusion. *People v. Smith*, 2017 IL App (1st) 143728, ¶ 86. The court, rather than the expert, must make the ultimate determination of whether a defendant is fit to stand trial. *Finlaw*, 2023 IL App (4th) 220797, ¶ 50. This is because the question of fitness is a matter of constitutional dimension, thereby requiring a meaningful exercise of judicial discretion. *Corbett*, 2022 IL App (2d) 200025, ¶ 56. The trial court must carefully evaluate the basis for the expert's opinion and may not merely adopt the expert's ultimate conclusion or accept the parties' stipulation to that conclusion. *Id.* We recognize that there is sometimes "a 'fine line' between performing an active, independent assessment and accepting a stipulation as to the expert's ultimate conclusion." *Id.* To comport with due process, the court

must make a record demonstrating "that it did more than merely base its fitness finding on the stipulation to the expert's ultimate conclusion." *People v. Cook*, 2014 IL App (2d) 130545, ¶ 20. It is sufficient if the record demonstrates that the court reviewed the report to which the parties stipulated and/or had the opportunity to observe and question the defendant. *Corbett*, 2022 IL App (2d) 200025, ¶ 56.

¶ 30    On appeal, we will reverse a trial court's fitness determination only if it is against the manifest weight of the evidence. *Id.* ¶ 47. This occurs when the opposite conclusion is clearly evident or when the trial court's decision is unreasonable, arbitrary, or not based on the evidence in the record. *Id.*

¶ 31    Here, the defendant's appointed appellate counsel has concluded that the trial court's finding of unfitness was supported by the evidence and that any argument to the contrary would lack merit. We agree. Dr. Coleman's report contained detailed descriptions of the defendant's irrational and inconsistent statements. In addition, Dr. Coleman indicated that the defendant exhibited symptoms that typically respond to medication, thereby providing an explanation for his opinion that the defendant would likely attain fitness within one year. The record contains no evidence to contradict the information in the report. This evidence is sufficient to support the court's finding of unfitness.

¶ 32    In addition, we believe the record demonstrates that the court exercised its independent judgment in making its decision, as required. We acknowledge that the fitness hearing itself consisted of the parties stipulating that Dr. Coleman would testify in accordance with his report if called as a witness, the court accepting that stipulation, and the court indicating that it found the defendant unfit to stand trial after reviewing the report. However, as previously stated, the line between conducting an independent assessment and merely accepting the expert's conclusion is

9

often a fine one, and courts may consider the stipulated testimony of an expert as long as they do not merely rely on a stipulation to the expert's conclusion. *Corbett*, 2022 IL App (2d) 200025, ¶ 56; *Smith*, 2017 IL App (1st) 143728, ¶ 86.

¶ 33    Here, the parties stipulated to the testimony Dr. Coleman would have provided had he been called as a witness, not just his conclusion. In addition, the court stated on the record that it reached its conclusion independently, and the record reveals that the court had sufficient opportunity to review the report. Although the court asked for a copy of the report during the hearing, the record indicates that defense counsel provided the court with a copy after a status hearing three weeks earlier, on September 16, 2024.

¶ 34    Further, the court had the opportunity to observe the defendant during hearings, including instances where he engaged in conduct that provided additional support for Dr. Coleman's conclusion. For example, when the issue of fitness was raised during the June 2024 status hearing, the court attempted to ask counsel a question, and the following exchange ensued:

"THE COURT: Okay. And am I—I thought I saw—

THE DEFENDANT: Appear—have I been late for? Let's do that. Let's talk to somebody else about my fitness.

THE COURT: I did have one question.

THE DEFENDANT: Because—

THE COURT: I see—

THE DEFENDANT: It's hot."

At the September 16, 2024, status hearing, the defendant again spoke out of turn, informing the court: "I'm trying to hire new counsel, and it's taken me two months. I need two months to get the new counsel paid for, and, you know, he's doing a fabulous job, this guy here, but there's issues

10

that's been directed to my attention that absolutely needs dealt with immediately." Both statements demonstrate the validity of Dr. Coleman's concerns over the defendant's potential to make irrational and irrelevant comments in court. In addition, the latter statement reveals that the defendant wanted to replace his public defender even though he believed he was "doing a fabulous job," and that he did not understand he had the right to have counsel appointed for him if he could not afford to pay an attorney.

¶ 35    Viewing the record as a whole, we find that the trial court engaged in a meaningful review sufficient to comport with the requirements of due process. In addition, we believe the evidence was sufficient to support the court's determination. We therefore agree with appellate counsel that any argument to the contrary would lack merit.

¶ 36                    B. Statutory Requirements for the Fitness Report

¶ 37    The next issue considered by counsel was whether Dr. Coleman's report comported with the statutory requirements for a fitness hearing. The relevant provision of the Code requires that a fitness report contain a diagnosis of the defendant along with an explanation of how it was reached and the facts the examiner relied on in diagnosing the defendant. 725 ILCS 5/104-15(a)(1) (West 2022). The report must also contain a description of the defendant's disability and its severity, as well as "an opinion as to whether and to what extent it impairs the defendant's ability to understand the nature and purpose of the proceedings against him or to assist in his defense, or both." *Id.* § 104-15(a)(2). If the report indicates that a defendant charged with a felony is unfit to stand trial, the report must include an opinion on the likelihood that the defendant will obtain fitness within one year, a "general description of the type of treatment needed," and an opinion as to the least physically restrictive treatment appropriate. *Id.* § 104-15(b).

¶ 38    When a trial court orders a psychiatric evaluation of a defendant, the court has a duty to ensure that the examiner's report satisfies these statutory requirements. *People v. Harris*, 113 Ill. App. 3d 663, 669 (1983). "Otherwise, the purpose of the statute would be defeated and the substance of the examiner's recommendations would not be amenable to independent judicial scrutiny." *Id.*

¶ 39    Here, the report contained all the required information and included detailed descriptions of Dr. Coleman's observations of the defendant during two examinations. This enabled the court to assess the defendant's fitness independently. *Cf. id.* at 668. We therefore conclude that the contents of the report fully complied with statutory requirements.

¶ 40    However, the statute also requires that the report be submitted to the court and both parties within 30 days of the order for a fitness examination. 725 ILCS 5/104-15(a) (West 2022). Here, the order for an examination was dated June 17, 2024, and the examination was not conducted until August 16, more than 30 days later. Although the record indicates that the defendant failed to appear for an evaluation that was scheduled earlier, it does not reveal whether the original appointment was scheduled to occur within the 30-day period. In addition, although the record indicates that defense counsel received the report sometime between August 30 (the date on the report) and September 16 (the date on which he tendered a copy of the report to the court), it does not indicate when or if Dr. Coleman submitted his report to the prosecution or the court. Thus, Dr. Coleman did not comply with the statutory requirement of submitting his report within 30 days.

¶ 41    However, we agree with appellate counsel that there is no meritorious argument she can raise in support of reversal on this basis. We first note that because the examination did not occur within the statutory time frame, it was impossible for Dr. Coleman to submit his report within that

time frame, although it is not clear whether the delay was attributable to the defendant's failure to appear for the first scheduled appointment.

¶ 42    Moreover, section 104-15 of the Code does not provide a sanction or remedy for failure to submit a report within 30 days. *People v. Oliver*, 367 Ill. App. 3d 826, 832 (2006). Significantly, the court possessed the report by at least September 16, 2024, more than three weeks before the October 9 fitness hearing. This gave the court adequate time to review the report. As such, this case stands in stark contrast to what occurred in *People v. Harris*, where the appellate court expressed concern regarding the fact that the fitness report was not received by the trial court until the morning of the hearing. *Harris*, 113 Ill. App. 3d at 668-69. For these reasons, we agree with appellate counsel that there is no meritorious argument that the untimely submission of the fitness report would warrant reversal.

¶ 43                              C. Right to a Jury

¶ 44    Counsel next considered whether the trial court deprived the defendant of his right to a jury. Criminal defendants do not have a constitutional right to have a jury decide the question of their fitness to stand trial. *People v. Shadowens*, 44 Ill. 2d 70, 72 (1969); *People v. McCoy*, 2014 IL App (2d) 130632, ¶ 22. However, the Code provides a statutory mechanism for requesting that a jury make that determination. *McCoy*, 2014 IL App (2d) 130632, ¶ 22 (citing 725 ILCS 5/104-12 (West 2012)). The pertinent provision states as follows:

> "The issue of the defendant's fitness may be determined in the first instance by the court or by a jury. The defense or the State may demand a jury or the court on its own motion may order a jury. However, when the issue is raised after trial has begun or after conviction but before sentencing, or when the issue is to be redetermined under Section 104-20 or 104-27, the issue shall be determined by the court." 725 ILCS 5/104-12 (West 2022).

13

Pursuant to this statutory language, a defendant must affirmatively demand a jury. *People v. Shanklin*, 26 Ill. App. 3d 167, 169-70 (1975); *People v. Brown*, 2016 IL App (1st) 151912-U, ¶ 14.[1]

¶ 45    This case involves an initial determination of fitness, and defense counsel raised the issue prior to trial. Thus, it does not involve a situation where the question must be decided by the trial court. However, neither the defendant nor his trial counsel requested that the matter be decided by a jury. Although the trial court had the authority to order a jury on its own motion, it was not required to do so absent a request by either of the parties. As such, we conclude that the defendant was not denied the right to a fitness hearing before a jury, and we agree with appellate counsel that any argument to the contrary would lack merit.

¶ 46                              D. Timeliness of the Hearing

¶ 47    Next, counsel considered the issue of whether the fitness hearing was timely. Under the Code, the trial court must conduct the fitness hearing within 45 days of receiving the report. 725 ILCS 5/104-16(a) (West 2022). As we discussed above, it is uncertain on the record before us when the court received the report; however, the earliest possible date was August 30, 2024, as that was the date on the report. The fitness hearing was held 40 days later, on October 9, 2024. As such, the hearing was timely, and any argument to the contrary would lack merit.

¶ 48                              E. Ineffective Assistance of Counsel

¶ 49    Finally, appellate counsel considered whether the defendant received ineffective assistance of trial counsel. We agree with her conclusion that any such claim would lack merit.

---

[1]Under Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1, 2021), parties may not cite unpublished nonprecedential orders issued prior to January 1, 2021, in their briefs for purposes other than double jeopardy, *res judicata*, collateral estoppel, or law of the case. However, nothing in Rule 23 precludes the appellate court from relying on the reasoning set forth in nonprecedential orders. See *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1. We may therefore consider *People v. Brown* as persuasive authority in accordance with these principles.

¶ 50    We evaluate claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by the United States Supreme Court. *Corbett*, 2022 IL App (2d) 200025, ¶ 46. To prevail under that test, a defendant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms and (2) counsel's deficient performance prejudiced the defendant such that he was denied a fair trial. *People v. Hiatt*, 2018 IL App (3d) 160751, ¶ 20. To satisfy the prejudice prong, a defendant must demonstrate a reasonable probability that the result of the proceeding would have been different if not for counsel's mistakes. *Corbett*, 2022 IL App (2d) 200025, ¶ 46.

¶ 51    In evaluating counsel's performance, we must consider defense counsel's role in the context of a fitness hearing. Where there is a *bona fide* doubt as to a defendant's fitness to stand trial, defense counsel must independently assess whether the defendant is fit and "take appropriate action upon that assessment." *Id.* ¶ 57. Defense counsel's obligation is "to take all the necessary steps to ensure a fair determination of the issue." *Id.* Significantly, where a defendant claims that he or she is fit to stand trial despite evidence to the contrary, as the defendant did in this case, defense counsel is not required to adopt the defendant's position or to advocate for a finding of fitness. *People v. Holt*, 2014 IL 116989, ¶ 56. Indeed, doing so would require counsel to improperly argue in favor of "an outcome that, in counsel's estimation—and in fact—would violate due process." *Id.* ¶ 51. This is because, as mentioned above, the prosecution of a defendant who is unfit to stand trial constitutes a violation of due process. *Id.*

¶ 52    Here, the defendant told Dr. Coleman that he was fit to stand trial. However, as we have already discussed at length, uncontroverted evidence demonstrates that he was not. Trial counsel, therefore, acted appropriately by requesting a fitness hearing and declining to argue for a finding

15

that the defendant was fit. In addition, in light of the overwhelming evidence that he was not fit, the defendant cannot show that a different result was reasonably probable had counsel done otherwise. As such, the defendant cannot satisfy either prong of the *Strickland* test, and appellate counsel correctly concluded that any claim of ineffective assistance of trial counsel would lack merit.

¶ 53                             III. CONCLUSION

¶ 54    For the foregoing reasons, we grant OSAD's motion to withdraw and affirm the order of the trial court finding the defendant unfit to stand trial.


¶ 55    Motion granted; order affirmed.