THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID MORRIS, Defendant-Appellant.

(No. 73-368;

Second District (2nd Division)—July 3, 1975.

*Rehearing denied July 22, 1975.*

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from a conviction for murder as a result of which the defendant was sentenced to a term of not less than 15 nor more than 30 years in the penitentiary.

Defendant alleges three grounds for the appeal: (1) that the trial court committed prejudicial error in instructing the jury under section 5—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 5—2 (Accountability for the Conduct of Another)), inasmuch as the court not

only gave the standard Illinois Pattern Jury Instruction on accountability but also another instruction on common design which defendant claims required a less culpable state of mind for conviction; (2) that the defendant was not proven guilty beyond a reasonable doubt under either the accountability instruction or the additional common-design instruction given to the jury; (3) that it was error for the court to enter judgment of conviction on each of two verdicts of guilty returned by the jury.

From the testimony it appears that the defendant was sitting in a tavern drinking beer during the afternoon of the crime. Sometime during the afternoon one Couch came into the tavern. The defendant was not acquainted with Couch. Another person, a frequent customer of the tavern by the name of Sadie Markham, also came into the tavern during the afternoon. She also was unacquainted with Couch but apparently had some acquaintance with the defendant. (Although she testified she had not known the defendant previously, there was contrary testimony.) Also, during the afternoon, the deceased, Donald Kirklin, came into the tavern. Kirklin was a friend of Sadie Markham's and the step-father of the defendant's wife. The defendant and Kirklin were not on good terms.

According to a statement made to the police by the defendant, when Couch came into the tavern he remarked that he had just gotten out of jail for fighting with a man over some money the man had stolen from him. After Kirklin entered the tavern Couch told the defendant that Kirklin had stolen $100 from him sometime during that week. He saw Couch and Kirklin in the back of the tavern and they were arguing; however, then they started laughing and, according to the defendant, Couch came back to the bar joking that he was going to "get Don" (Kirklin). However, after that they all sat together again drinking beer. Sadie Markham also testified that while they were all drinking beer in the tavern she overheard Couch say to Kirklin that he "would get his money one way or another."

Around 5 o'clock they all left the tavern together in the defendant's car. Sadie testified that they just went "riding around" rather aimlessly. After awhile they found themselves on a country road. They had been drinking cans of beer which they had purchased when they left the tavern. The testimony was that all of them got out of the car to urinate. At that time, according to Sadie Markham, both the defendant and Couch started punching and kicking Kirklin but they stopped and the three men got back into the car. Sadie testified that at that time Couch said to Kirklin, "I oughta kill you right now."

In any event, they all got back into the car together and rode around some more. From the testimony it appears they continued to drink beer during all of this time. Sadie Markham testified that a little while after

the first incident they stopped again. The three men got out and went around to the front of the car and off to one side, out of her sight. After a few minutes Couch and the defendant returned. The defendant had no shirt on, although he had been wearing a T-shirt when he left the car. Also, Sadie testified, the defendant was carrying a piece of bumper-jack which he put in the car in the front. The defendant remarked that he would have to go back to town to get some more clothes. Then, before they left the scene, according to Sadie, the defendant said to Couch that he should go back and make sure that Kirklin was dead. They then started to drive back to Aurora. Shortly thereafter the defendant lost control of the car and hit a tree, wrecking the car. They then started to walk the remaining distance back to Aurora and were picked up by the police, who had been alerted that a car had run off the road. The police at that time were unaware of the killing.

The defendant's version sharply disagreed with Sadie's in some particulars. He did not take the stand, except for the limited purpose of testifying concerning the circumstances of the taking of a statement from him a few hours after the incident, in an attempt to suppress the statement. However, the statement was ruled admissible as having been voluntarily and intelligently made. In his statement the defendant said that after he had stopped the car the first time and they all got out, Couch started a fight with Kirklin, which he, the defendant, broke up after Kirklin called to him to come and help him. That they all then got back in the car and started driving around and they got lost. They stopped again and got out of the car and then Sadie got back in. At that time, according to the defendant, Kirklin made an offensive remark to the defendant and the defendant struck Kirklin. He said he hit him only a couple of blows with his fist and that Kirklin remained on his feet. However, this triggered a reaction in Couch and Couch knocked Kirklin down and started kicking him. The defendant said he left Couch and Kirklin struggling and went back to the car. Couch returned alone and the defendant then went back to where Kirklin was lying on the ground and saw that he was not breathing. He picked up a piece of bumper-jack which was lying alongside of Kirklin and put it back in the car. He then panicked and drove away but lost control of the car and hit a tree. In his statement the defendant said he opened the trunk of the car after the fight with Kirklin to look for another shirt, since the one he had on was ripped. He did not explain how it got ripped and actually the shirt was not just ripped, according to Sadie and the arresting officer who stopped them on the road—it was missing entirely. The defendant said that when he opened the trunk of the car to look for another shirt, Couch, who was standing alongside, picked up a piece of a bumper-jack

out of the trunk and went over to where Kirklin was lying. He did not actually observe Couch hit Kirklin with the bumper-jack but heard something that sounded "like he was hitting and again it sounded like he was hitting the dirt." When the defendant went back to see Kirklin he saw that Kirklin was not breathing. The defendant denied doing more than striking the deceased twice with his fist.

There is no record of any testimony by Couch because Couch was found incompetent to stand trial. However, there is not much conflict between Sadie's testimony and the defendant's except that Sadie testified that the defendant had taken part in the attack on Kirklin the first time they got out of the car, whereas the defendant said he had not struck Kirklin at that time but had, in fact, broken up the fight between Couch and Kirklin. Sadie did not see what happened the second time as it was out of her sight, according to her testimony. She merely saw the three men get out of the car and walk around in front and to the side. She then saw only Couch and the defendant return, Couch first, then the defendant without his shirt. She did not testify that she heard anything.

The defendant admitted that he and Kirklin were not on good terms because of a previous family fight. However, on the basis of the actual testimony there was no direct evidence that the defendant did the killing, rather than Couch. The physical evidence indicated death was caused by a blunt instrument; however, the defendant only admitted striking the deceased with his fist and even then only after provocation. Sadie Markham's reputation generally and for truthfulness was not good, but in any event she did not claim to have observed the defendant strike the victim the second time, even with his fist. The most damning evidence she gave against the defendant was that she saw him return to the car without his shirt and that he had placed a bumper-jack part in the car after he returned.

The indictment was in three counts. Count I, that the defendant struck Donald Kirklin with his fists and a part of a bumper-jack thus causing his death; count II, that the defendant struck Donald Kirklin with his fist and part of a bumper-jack, knowing this would cause his death, and count III, that the defendant struck Donald Kirklin with his fist and a part of a bumper-jack knowing there was a great probability this would cause his death. The jury returned a guilty verdict on counts II and III.

The argument of the defendant that it was error to give the instruction on common design as well as the standard IPI instruction on accountability rests on the contention that there was no evidence from which a common design could be deduced and the instruction was therefore prejudicial.

There seems to be little doubt after a thorough review of the testimony

that there was sufficient evidence to justify the giving of the standard IPI instruction on accountability, which reads:

"5.03  Responsibility for Act of Another—Accessoryship

A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime."

The admitted facts here are that the defendant, having ill will toward the deceased, got out of the car with the victim and another person who also had a serious grudge against the deceased and who had remarked that he "oughta have killed" the deceased shortly before that; that the defendant struck the deceased twice; that he stood there while his companion knocked the deceased down and kicked him; that he then went away having somehow entirely lost his shirt; that he opened the trunk of his car and either gave or allowed his companion to take therefrom a piece of bumper-jack and return to where the deceased was lying and that he sat in his car while there was a sound of blows being struck by his companion. There was further evidence of the defendant having been in a struggle. The deputy sheriff who first encountered the defendant and his two companions on the road following the accident after they had abandoned the car testified that when he first saw him the crotch was torn out of the defendant's pants, he had no belt on and no buttons on the pants and the zipper was down and that he had blood on his arm.

■■ On these facts the jury would seem to have been amply justified in finding the defendant guilty of the murder, either as an accessory or as principal, and the standard instruction on accountability would have been sufficient as a basis for the finding of guilty on the two counts on which the defendant was convicted.

The common-design instruction was a non-IPI instruction, People's exhibit No. 8, which reads:

"The court instructs the jury that if there is evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design, there is an inference that he shared a common purpose and this will sustain his conviction as a principal for a crime committed by another in furtherance of the venture."

In his brief the defendant contends that the court committed error when it "instructed the jury that a less culpable state of mind than that required by the accountability section of the Illinois Criminal Code would sustain defendant's conviction as a principal to the offense of

murder." Apparently what the defendant means by the reference to a less culpable state of mind is that under the instruction complained of— Instruction No. 8—the elements of accountability set out in section 5—2 of the Criminal Code need not be proved since the instruction objected to only requires that the defendant "voluntarily attached himself to a group bent on illegal acts, with knowledge of its design," and this is less culpable than soliciting, aiding or abetting the planning or commission of the crime.

Several of the cases cited by the defendant in support of his contention (*People v. Kriston*, 12 Ill.App.3d 18; *People v. Hill*, 39 Ill.2d 125; *People v. Rybka*, 16 Ill.2d 394) do not appear to us to be helpful to the defendant. *People v. Stanko*, 402 Ill. 558, is not relevant as there the instruction given was with regard to a crime the defendant was not actually charged with—abortion—rather than attempted abortion—and the possible confusion of the jury was clearly prejudicial. The case of *People v. Kessler*, 11 Ill.App.3d 321, extensively quoted by the defendant on this point, was reversed by our supreme court in *People v. Kessler*, 57 Ill.2d 493, and the language quoted by the defendant in that case was held not to be the law.

■■ However, the common-design standard of accountability is not stated by the court to be the only criterion by which to judge the defendant's guilt in the case before us. The instruction on accountability given by the standard IPI instruction referred to the actual facts of the case as established by the testimony. The possibility of a common design by the defendant and his companions, covered by the instruction objected to, did not vitiate the standard accountability instruction based on the evidence before the jury as to what actually occurred. Admittedly, there are cases where the giving of an additional instruction not embraced within the evidence might so confuse the jury as to amount to prejudicial error. This might be true in a case where the only logical basis for the finding of guilty would be the additional instruction which went beyond the evidence. Such was the case in *People v. Stanko*, 402 Ill. 558. But such is not the case here. In this case, had the objected-to instruction been omitted, the result, we are convinced, would have been the same because the basis of the conviction was the clear accountability of the defendant under the facts developed by the testimony. The defendant was not guilty because of acting in a common design, but rather because the evidence adduced at the trial indicated his culpability as either a principal for doing the act or as accessory for aiding and abetting it. (See *People v. Kriston*, 12 Ill.App.3d 18; see also *People v. Green*, 14 Ill.App.3d 972, where an instruction which was broader than the actual charge called for was held not prejudicial since the facts were such that the jury could not

have been misled by the instruction.) We hold, therefore, that while the giving of the instruction on common design in the language in which it was couched may have been somewhat broader than the evidence, it was not such error as to require reversal in view of the evidence of defendant's guilt under the properly submitted instruction on accountability. This holding, we emphasize, relates only to the particular facts of this case. It is not to be taken as indicating a general rule that inadequate, inconsistent or irrelevant instructions can always be disregarded where other, more correct instructions are also tendered on which the judgment might be based. Where there is a reasonable chance that the jury was misled, the error cannot be dismissed as harmless.

We believe the discussion of the point raised as to the common-design instruction also disposes of the defendant's contention as to the sufficiency of the evidence to convict him. The defendant's argument is that the common-design instruction was prejudicial because it required less direct evidence to sustain it than is required for a conviction as an accessory before the fact, therefore the proper standard of proof was not established. In the foregoing discussion we have indicated, however, that in our opinion the evidence of the defendant's accountability was sufficiently strong to sustain the jury's finding of guilty had the questioned instruction been omitted. While the credibility of Sadie Markham was not above suspicion, the testimony she gave was mostly only corroborative of the defendant's own statement to the State's Attorney. Outside of her testimony that the defendant said after the fight that Couch should go back and make sure that Kirklin was dead, as well as the discrepancy with regard to whether the defendant engaged in the fight with Kirklin when they got out of the car the first time, her story of the incident did not add much to the defendant's own statement. The coroner testified that the deceased was beaten about the head by a heavy, blunt instrument and this was apparently the cause of death. The defendant admitted opening the trunk of the car where the bumper-jack part was and allowing Couch to take it out of the trunk while he was standing alongside of him and he made no pretense that he did not know what Couch was going to do with it. The victim's hair was found on the bumper-jack part and there could be no doubt that it was the fatal instrument. While the defendant contended he did not strike the victim with the bumper-jack part or anything but his fists, his own statement shows accountability and Sadie Markham's testimony indicates that he returned from the scene of the murder carrying the bumper-jack part, so he either used it at the scene or allowed Couch to take it knowing that Couch would use it as it was, to beat Kirklin. Otherwise he would not have thought to remove it from the scene, as he did, according to both his own testimony and that of

Sadie that he carried it back and put it in the car. The other evidence of his accountability has already been adverted to and definitely sustains the State's burden of proof as to accountability. We find the defendant's contention in this regard to be without merit.

The third point raised by the defendant is with regard to the entry by the trial court of the judgment on two convictions—one on count II and the other on count III—for a single crime. The defendant contends this was error and cites *People v. Lilly*, 56 Ill.2d 493. We do not find *Lilly* to be applicable to the case before us, however, as there it was a question of two judgments of conviction for two different offenses—rape and indecent liberties. The supreme court held that the lesser offense of indecent liberties, being included in the greater offense of rape, the lesser offense was merged in the greater and there could be only one judgment of conviction entered.

■■ The situation in the present case does not appear to us to require reversal of either of the convictions under the two counts of the indictment on which the defendant was found guilty. We do not believe the resulting situation requires any corrective action by this court.

The judgment of the trial court is affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.