THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE EDWARDS, Defendant-Appellant.

Second District No. 82—1015

Opinion filed November 26, 1984.

994

Robert J. Anderson, of Callum, Anderson & Deitsch, of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko, Raymond L. Beck, and Martin P. Moltz, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Eugene Edwards, appeals from his conviction in the circuit court of Du Page County for the offense of unlawful possession of a controlled substance and from his 12-year sentence. Defendant contends he was not proved guilty beyond a reasonable doubt and that the trial court erred in denying his severance motion and in tendering certain jury instructions. Defendant challenges his sentence on the grounds that the trial judge considered an improper aggravating factor and that the sentence is excessive. Because we find no reversible error committed by the trial court, we affirm.

Three individuals were arrested on October 13, 1981. Defendant and codefendant Michael Sarfino both were charged with the offense of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)), unlawful possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)), armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2), and unlawful use of a weapon (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(4)). Codefendant Edward Kukla was charged with all offenses but the unlawful use of weapons offense. The arrests were the result of an undercover narcotics investigation.

The principal State witness, Special Agent Angelo M. DeFranco, testified he indicated to informant Wayne Meinhard over the telephone at 3:30 p.m. on October 13, 1981, that he believed drugs would be available for purchase that day at approximately 6 p.m. and informed Meinhard to purchase one pound of cocaine for $24,000. As a

part of this drug investigation, special agents began a stake-out of Sarfino's home from a nearby street on the afternoon of October 13. Special Agent Marshall of the Department of Law Enforcement testified that at approximately 5:23 p.m. on October 13, 1981, he observed Kukla and Meinhard drive up to Sarfino's house, park in his driveway and enter the house. At 6:12 p.m. that same day, defendant drove up to Sarfino's house in a white van, exited the vehicle carrying a brown satchel with handles on it, was met at the door by Sarfino and entered the residence. Acting on directions from DeFranco, Meinhard, while at Sarfino's house, inspected the cocaine and then, at approximately 6:20 p.m., phoned DeFranco to inform him that the cocaine was there.

After receiving Meinhard's phone call, DeFranco and Special Agent Wayne Fieroh left the Elgin police department (DCI Office), drove to the Holiday Inn in Elmhurst, and arrived at 7:15 p.m. There, they met Meinhard and Kukla, who had left Sarfino's house at approximately 6:57 p.m., and Kukla thereafter phoned someone in the presence of the special agent and Meinhard. Special Agent Marshall observed Sarfino and Edwards depart from Sarfino's house at 7:32 p.m. Sometime after his phone call, Kukla informed DeFranco and Fieroh that "he is here" and they all exited the hotel lobby and met with defendant and Sarfino, who were in a white Chrysler Cordoba in the hotel parking lot. There, Fieroh allowed Sarfino to inspect the money. Following the inspection, Sarfino advised DeFranco to follow him to his house where the "stuff" was located. Once at Sarfino's house, the agents remained in their unmarked, undercover vehicle, and soon Sarfino walked back to and entered the agents' car. Once inside, Sarfino removed a large package wrapped in newspaper from his pants and opened it. Inside was a large, clear plastic bag containing white powder later determined to be cocaine. Defendant was not in the car when the cocaine was delivered, but did attempt to flee once several unmarked cars converged on the scene. The brown satchel carried by defendant when he first arrived at Sarfino's house was found by an officer empty nearby the car in which the transaction occurred.

After a jury trial, defendant was found guilty of unlawful possession with intent to deliver, but was found not guilty of the unlawful delivery and armed violence offenses. The State nol-prossed the unlawful use of weapons count. After the trial court denied defendant's motion for acquittal or for a new trial, it sentenced defendant to a term of 12 years in the Illinois Department of Corrections. Defendant filed a timely notice of appeal.

Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt. Both defendant and the State argue that two prosecution theories could arguably support the jury verdict: (1) defendant was independently proved to have possessed the cocaine, and (2) defendant was proved guilty on an accountability theory. Defendant argues he was not proved guilty beyond a reasonable doubt to have either *possessed* the cocaine as a principal or to have been accountable for Sarfino's possession of the cocaine. In reviewing the evidence, this court will not lightly overturn a jury's verdict, and will not substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Molstad* (1984), 101 Ill. 2d 128.) The evidence in large part pertains to both theories of prosecution and is recounted below.

The two principal State witnesses offering testimony implicating defendant were special agents DeFranco and Fieroh. DeFranco stated that after receiving the call from his informant, Meinhard, he and Fieroh went to the Holiday Inn in Elmhurst. There, they met Meinhard and Kukla. Soon thereafter, Sarfino drove up with defendant in the passenger seat. According to DeFranco, DeFranco approached and stood by the passenger side of the car and then Sarfino stated: "We don't have the stuff with us here, it is at my house in the van." Defendant then said, "We have to see the money." Defendant contends DeFranco's credibility was impeached by his earlier testimony in which he stated that Sarfino asked him if he had the money without mentioning any statement made by defendant. However, DeFranco one page earlier in his trial testimony confirmed that defendant asked about the money.

"Q. [Defendant's attorney]: Now, you said that my client said, 'you have to see the money'?

A. [DeFranco]: 'We have to see the money.'

Q. 'We'?

Are you sure my client said that but not Mr. Sarfino; is that correct?

A. He said it and then Mr. Sarfino said it again."

The credibility of a witness is properly determined by the trier of fact. (*People v. McVay* (1981), 98 Ill. App. 3d 708, 714, 424 N.E.2d 922, 926.) This evidence is not so improbable as to create a reasonable doubt of guilt.

DeFranco's testimony that Sarfino stated the stuff was at his house in the van implicates defendant, because the record indicates that defendant drove up to Sarfino's house in a van. DeFranco then stated he had the money in the car, and Sarfino ordered DeFranco to

walk to the car while Sarfino and Edwards drove and parked next to the car. Sarfino exited and, in response to seeing the $24,000 displayed by Fieroh, stated "it looked good." When DeFranco asked why Edwards was there, Sarfino stated, "That's my partner." Sarfino then told everyone to return to his house where the "stuff" was located. DeFranco testified that after he announced that Sarfino was under arrest, he observed defendant running away and ordered the other officers to apprehend defendant. DeFranco admitted that no one told defendant that he was under arrest prior to his flight, but DeFranco stated at least one unmarked car had displayed flashing red lights when converging on the scene.

Additional evidence implicating defendant was offered by Special Agent Marshall, who testified that he observed defendant arrive at Sarfino's home on October 13, 1981, at about 6:12 p.m. in a white van. The time of his arrival is significant because DeFranco had earlier testified that the plans for the purchase of the cocaine had been set for 6 p.m. that evening. DeFranco instructed Meinhard to call him after viewing the cocaine; Meinhard while at Sarfino's residence phoned DeFranco at 6:20 p.m. and told him he had observed the cocaine, was leaving, and stated, "I will be meeting you [DeFranco] at the Holiday Inn in Elmhurst." The reasonable inference from these facts is that defendant brought the cocaine with him at about 6 p.m.

Agent Marshall testified that defendant arrived at Sarfino's house at 6:12 p.m. carrying a brown satchel with handles into the residence. Defendant was greeted at the door by Sarfino. Marshall admitted on cross-examination that from his observation point across the street from Sarfino's residence, he observed nothing which would indicate that the satchel contained contraband. Marvin Grehn, an agent with the Department of Law Enforcement, also kept the house under surveillance on the day of the drug sale and testified he found the satchel empty on Sarfino's front lawn immediately after defendant was arrested. It strains credulity to believe defendant arrived with an empty satchel and there is no evidence in the record that the satchel contained anything other than cocaine. Eight minutes after defendant arrived, Meinhard called DeFranco to inform him he had inspected the cocaine. Had the cocaine already been at Sarfino's house, Meinhard could have viewed it and called prior to defendant's arrival, but he did not call until after defendant brought the satchel into the house. The reasonable inference from these facts is that defendant arrived with the cocaine in the satchel, and Sarfino removed the cocaine when he showed it to DeFranco later in the agents' car. We conclude these facts in conjunction with Edwards' presence at the Holiday Inn and

his subsequent flight establish beyond a reasonable doubt that Edwards possessed the cocaine when he arrived at Sarfino's house.

Even if defendant was not proved guilty of possession beyond a reasonable doubt as a principal, the State asserts it proved defendant guilty on an accountability theory of *delivery* of the cocaine. As emphasized by defendant, however, the jury found defendant not guilty of the unlawful delivery charge. Therefore, the issue is whether defendant was proved guilty of possession on an accountability theory.

■ This court in *People v. Schlig* (1983), 120 Ill. App. 3d 561, 570, 458 N.E.2d 544, 550-51, stated the rules regarding accountability as follows:

> "In order to hold a defendant accountable for the conduct of another, the State must prove beyond a reasonable doubt that: (1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation must have taken place either before or during commission of the offense; and (3) it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. [Citations.] Mere presence at the scene of a crime, even with knowledge that a crime is being committed, or negative acquiescence is not enough to make a person a principal. It is not necessary, however, to prove that the defendant participated in the commission of the act which constituted the offense. [Citation.] Evidence of conduct showing a design on the part of the defendant to aid in a crime renders the defendant accountable for the perpetrator's actions. [Citation.] A person may aid or abet without actually participating in the overt act or acts, and evidence that the accused attached herself to a group bent on illegal acts with knowledge of its design supports the inference that she shared the common illegal purpose and will sustain her conviction as a principal for a crime committed by another in furtherance of the venture. [Citation.]"

Our review of the evidence convinces us that defendant was proved accountable for possession of the cocaine. Defendant's involvement in the drug sale was more than simply presence at the scene of the crime. He arrived at the residence with the satchel. At some point prior to 6:20 p.m., in Sarfino's house, Meinhard examined one pound of cocaine. Defendant then accompanied Sarfino to the Holiday Inn, where defendant asked to see their money. Sarfino referred to defendant as his partner. From the description of the events which transpired at the Holiday Inn, all present were aware that a drug transac-

tion was in progress. In fact, defendant does not deny that he knew what was occurring. After Sarfino stated that the "stuff" was at his house in a van (driven there by defendant), defendant returned with Sarfino to the residence, where the drug sale was completed. These facts show "a design on the part of the defendant to aid in [the] crime \*\*\*." (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 570, 458 N.E.2d 544, 551.) Therefore, defendant was proved guilty beyond a reasonable doubt of possession either as a principal or on an accountability theory.

■ Defendant next asserts that the trial court erred in denying his severance motion based upon his contention that inconsistent defenses and improper testimony confused the jury. The general principles governing severance questions were well explained by the appellate court in *People v. Murphy*:

"The general rule is that persons jointly indicted should be jointly tried and separate trials are only required when the defenses are so antagonistic that a fair trial can be achieved only through severance. [Citations.] However, it is incumbent upon the defendant moving for a separate trial to demonstrate prior to trial how he would be prejudiced by a joint trial. [Citations.] The decision to grant severance rests within the sound discretion of the trial court. \*\*\* The mere apprehension that defenses may prove antagonistic without a showing that such apprehensions are well founded is an insufficient ground for severance. [Citations.]" (*People v. Murphy* (1981), 93 Ill. App. 3d 606, 609, 417 N.E.2d 759, 761.)

On review, the court will look only to the petition filed by the defendant and the matters alleged therein and will not consider what substantively happens during the trial. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 939-40, 455 N.E.2d 733, 775, *cert. denied* (1984), 467 U.S. \_\_\_, 81 L. Ed. 2d 351, 104 S. Ct. 2394.) Antagonistic defenses have been confined to those instances where one or more codefendants testify implicating the others. (*People v. Jones* (1980), 81 Ill. App. 3d 724, 401 N.E.2d 1325.) A conclusory assertion that defenses are antagonistic is insufficient to warrant a severance.

"There must be a true conflict; such as where each defendant attributes an offense to the actions of the other [citation]; where each defendant condemns the other and declares the other will testify to facts exculpatory to himself and incriminating to the other [citation]; where a codefendant's confession implicating defendant is received into evidence without instructions to the jury limiting its admissibility to the maker of the

statement [citation]; or where each codefendant makes an admission or confession orally and the references to the codefendant applying for the severance are not eliminated from the testimony. [Citation.]" *People v. Guyon* (1983), 117 Ill. App. 3d 522, 531, 453 N.E.2d 849, 858.

In his motion for severance filed on October 25, 1983, defendant stated that he was going to deny at trial his involvement in the cocaine sale and that codefendant Kukla planned to testify, to admit his guilt, and to assert the defense of entrapment. Defendant further stated he was electing a jury trial, while Kukla was electing a bench trial. He asserted that Kukla's defense would be antagonistic to his own defense and that allowing the jury to hear Kukla's and Sarfino's testimony "will impermissibly deny the defendant, EUGENE EDWARDS, of his rights since such testimony will invariably tend to incriminate him." Apart from these generalized statements, the only specific references to prejudice were hearsay statements incorporated by reference into his severance motion from his motion *in limine*.

Defendant's severance motion failed to "demonstrate how the defendant is going to be prejudiced by proceeding with a joint trial." (*People v. Lee* (1981), 87 Ill. 2d 182, 186.) Although asserting in his motion that his defense was antagonistic to that of Kukla's, defendant failed to support his assertion with any facts. "[C]onclusionary assertions *** are no substitute for a detailed recitation of what the codefendant's defense could be and how it conflicted with his." (*People v. Laboy-Rivera* (1984), 126 Ill. App. 3d 197, 202, 466 N.E.2d 1144, 1148.) Likewise, defendant's conclusory assertion that certain statements of the codefendant listed in his motion were prejudicial did not provide the trial court with an adequate basis to order a severance. Because of the insufficiency of the petition, therefore, the trial court properly denied defendant's severance request.

Even if we address the merits of defendant's severance petition, we conclude denial of the motion by the trial court was not error. Defendant's mere assertion that his defense was antagonistic to Kukla's entrapment defense does not establish the requisite antagonism. An entrapment defense requires a defendant to admit the acts constituting the offense, but Kukla in admitting the charge need not have implicated defendant. Defendant's severance motion to be successful should have asserted that Kukla's entrapment defense would incriminate defendant by involving him in the drug transaction. Absent this assertion, Kukla's defense would not necessarily be antagonistic to defendant's defense, and "[m]ere apprehensions of prejudice are not enough." (*People v. Lee* (1981), 87 Ill. 2d 182, 186.) More im-

portant, in the case at bar, the trial judge specifically granted defendant's motion *in limine* which requested that "the jury be precluded from hearing any of the testimony or other evidence offered by Co-Defendant Kukla in support of his entrapment defense." Given the fact that the jury never heard Kukla's admission of the act, we fail to see how Kukla's assertion of entrapment could have prejudiced defendant in any way.

Defendant also appears to assert that his defense was antagonistic to that advanced by Sarfino. Again, his argument lacks merit. Defendant contends his defense at trial was that he was an acquaintance of Sarfino and visited his residence on the day of the arrest only as a friend, thus offering a reasonable hypothesis of innocence. As the State persuasively argues and the record demonstrates, however, Sarfino's trial defense was that he was attempting lawfully to sell guns and not cocaine to the agent. Sarfino testified that Meinhard framed him by delivering the cocaine. In fact, Sarfino testified that defendant came over to his house for a social visit, traveled with Sarfino to the Holiday Inn to keep Sarfino company, and did not even know Sarfino was attempting to sell firearms, much less cocaine. Sarfino denied he introduced defendant as his partner and testified Edwards was not in the car when Meinhard disclosed the cocaine. Therefore, Sarfino's defense, if believed by the jury, would absolve and not implicate defendant.

◼ In addition to his assertion that severance was warranted because his codefendants' defenses were antagonistic to his own, defendant also contends that "hearsay statements of the co-defendant were repeatedly introduced and used against the defendant." However, defendant does not specifically object to the *introduction* of the statements, but rather asserts that their introduction rendered erroneous the trial court's denial of his severance motion.

The reviewing court looks to the allegations in the defendant's petition for severance when evaluating the correctness of the court's ruling on the petition. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 939-40, 455 N.E.2d 733, 775, *cert. denied* (1984), 467 U.S. ___, 81 L. Ed. 2d 351, 104 S. Ct. 2394.) Defendant's motion for severance only recited four statements made by Kukla and two by Sarfino as evidence of prejudice. As defendant acknowledges in his appellate brief, however, the prejudice was almost entirely cured when the trial court granted defendant's motion *in limine* to preclude the jury from hearing Kukla's testimony. Defendant, therefore, bases his argument not on the direct testimony of Kukla, but on Kukla's statements which were introduced into evidence by the State through the testimony of

DeFranco. However, the only statement of Kukla referenced in the record is the State's citation to DeFranco's testimony that Kukla told him a black man would deliver the cocaine. Defendant did reference the portion of the record where, through DeFranco, the State introduced Sarfino's statements that the cocaine contained rocks in the middle and that defendant was Sarfino's partner. These three statements, therefore, constitute the only basis for defendant's allegation of prejudice.

The severance motion properly was denied, however, because defendant did not demonstrate how the joint trial would prejudice him. In support of his severance contention, defendant relies upon *People v. McVay* (1981), 98 Ill. App. 3d 708, 424 N.E.2d 922, which in turn relied on two earlier supreme court decisions. (See *People v. Miller* (1968), 40 Ill. 2d 154, 158-59; *People v. Clark* (1959), 17 Ill. 2d 486, 492.) All three decisions are distinguishable from the situation here. The incriminating statements in those cases were all made by the codefendants after their arrests, and, thus, the statements were subject to the general rule that extrajudicial statements are admissible only against the defendant making them and constitute inadmissible hearsay as to any other defendant unless he adopts the statements as his own. *People v. Clark* (1959), 17 Ill. 2d 486; *People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141.

Despite the general rule that defendants jointly indicted should be jointly tried, courts have recognized that a codefendant's admission introduced through an officer's testimony may be so prejudicial that cautionary instructions regarding the admission are insufficient to ensure that the other defendant receives a fair trial. (See *People v. McVay* (1981), 98 Ill. App. 3d 708, 712, 424 N.E.2d 922, 927.) This prejudice is highlighted by the fact that were the defendants tried separately, the hearsay rule would prevent use of the codefendant's admission against the other defendants. Here, in contrast, the statements of codefendants Kukla and Sarfino as related by DeFranco were made not after their arrest, but rather during the commission of the crime. As such, the statements were admissible against defendant based on the co-conspirator exception to the hearsay rule, which provides that acts and declarations of a co-conspirator made in furtherance of the conspiracy are admissible against a defendant even when they are made out of the defendant's presence. (*People v. Jackson* (1977), 49 Ill. App. 3d 1018, 364 N.E.2d 975.) In order to avail itself of the co-conspirator exception, the State need not charge the crime of conspiracy or indict and try all the co-conspirators for that offense. Rather, the State is merely required to establish a *prima facie* case

by independent evidence (49 Ill. App. 3d 1018, 1020, 364 N.E.2d 975, 976) that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach another end by criminal means. (*People v. Olmos* (1979), 77 Ill. App. 3d 287, 291, 395 N.E.2d 968, 971.) The existence of the agreement which is the essence of the conspiracy need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances including the acts and declarations of the accused. *People v. Olmos* (1979), 77 Ill. App. 3d 287, 395 N.E.2d 968.

 Although defendant asserts the record is devoid of any independent proof of a conspiracy, the State cites certain facts which it contends establish the conspiracy's existence. When Kukla at the Elmhurst Holiday Inn placed a phone call to the seller, both Edwards and Sarfino soon thereafter drove up to the hotel. After Sarfino examined the money, the parties drove back to Sarfino's house, where Sarfino had said the cocaine was located. This statement was not hearsay, because the State did not introduce it for the truth of the matter asserted (that the cocaine was at Sarfino's house), but rather as evidence of an agreement between Sarfino and Edwards concerning the commission of the offense. Edwards made no effort to disavow the act or to extricate himself from the sale and was within 200 to 250 feet of the place where the drug sale occurred at the time of Sarfino's arrest. His empty satchel was very near the location where the delivery was made. These facts, although not conclusive of guilt, are sufficient to establish a *prima facie* case of conspiracy independent from the hearsay statements of the defendants. Therefore, the statements were properly admitted based upon the co-conspirator exception to the hearsay rule. (See *People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733, *cert. denied* (1984), 467 U.S. ___, 81 L. Ed. 2d 351, 104 S. Ct. 2394.) Since we have concluded that these statements are admissible against defendant based upon the co-conspirator hearsay exception, this case is distinguishable from *McVay, Miller* and *Clark*, where the incriminating statements were not admissible against those defendants in either separate or joint trials. In contrast, the statements complained of here were admissible against defendant in either a joint or a separate trial based on the co-conspirator hearsay exception. Given this fact, defendant has failed to demonstrate, as he must to warrant a severance, how he would be prejudiced by the joint trial. (See *People v. Lee* (1981), 87 Ill. 2d 182.) We conclude that the trial court did not abuse its discretion in denying defendant's severance motion. *People v. Laboy-Rivera* (1984), 126 Ill. App. 3d 197, 466 N.E.2d 1144.

■ The third argument advanced by defendant is that the trial court erred in giving multiple instructions to the jury on the offense of accountability. The jury received two instructions regarding accountability. The first was Illinois Pattern Jury Instruction, Criminal, No. 5.03 (2d ed. 1981), which reads:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense."

The jury was also given an additional non-IPI instruction, which stated:

"The Court instructs the jury that if there is evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design, there is an inference that he shared a common purpose and this will sustain his conviction as a principal for a crime committed by another in furtherance of the venture."

Defendant asserts that submission of both instructions was reversible error because they confused the jury and defeated the goal of Supreme Court Rule 451 (87 Ill. 2d R. 451), which directs that IPI instructions shall be used in criminal cases. Specifically, defendant argues that IPI Criminal No. 5.03 accurately states the law regarding accountability, and that the non-IPI instruction contradicts the IPI instruction and confused the jury regarding the requisite intent for accountability. This court, however, rejected the contention that the non-IPI accountability instruction allows for conviction based on a less culpable mental state in *People v. Morris* (1975), 29 Ill. App. 3d 900, 906-07, 331 N.E.2d 624, 628-29. Furthermore, the instruction, contrary to defendant's assertion, does convey the necessity of specific intent by requiring that a defendant *voluntarily* attach himself to a group bent on illegal acts with *knowledge* of its design.

Defendant also asserts that the reference in the non-IPI instruction to "crime" instead of "offense" allowed the jury to find defendant guilty of possession upon proof that he aided Sarfino in any offense even if that offense was not cocaine possession. Defendant's construction of the non-IPI instruction is not reasonable. Our reading of that instruction convinces us that to be convicted thereon, both defendant and the codefendant would have to be involved in the same offense.

Defendant's most persuasive instructions challenge is that Su-

preme Court Rule 451 (87 Ill. 2d R. 451) requires the exclusive use of the IPI accountability instruction in criminal cases. In *People v. Morris* (1975), 29 Ill. App. 3d 900, 331 N.E.2d 624, however, this court rejected the defendant's contention that the lower court committed reversible error by tendering both the IPI and non-IPI accountability instructions. More recently, the court in *People v. Poll* (1979), 74 Ill. App. 3d 534, 538, 393 N.E.2d 732, 735, *modified on other grounds* (1980), 81 Ill. 2d 286, rejected the defendant's contention that the non-IPI accountability instruction was given improperly and required reversal. However, in *dicta*, the court reiterated its direction that the IPI instruction should be used:

> "While we hold that the giving of such instruction upon this record does not require reversal, we state *again*, as we did in *Hunter*, that IPI Criminal No. 5.03 is the appropriate instruction on accountability and *it* should be used." (*People v. Poll* (1979), 74 Ill. App. 3d 534, 538, 393 N.E.2d 732, 735.)

While concurrent use of the instructions is not the desired practice, defendant has not established any prejudice, and we fail to see how the dual instructions could have influenced the jury's verdict. Therefore, we find no reversible error in the trial court's submission of both accountability instructions to the jury.

Defendant next asserts that the trial court violated the rule articulated in *People v. Conover* (1981), 84 Ill. 2d 400, where the supreme court held that consideration of the fact that a defendant was to have received compensation for committing the offense was an improper aggravating sentencing factor when the compensation amounted to a share in the proceeds of the crime. At the sentencing hearing in the instant case, the trial judge made the following reference to compensation:

> "Considering the evidence at the trial and the natural inference that flows from the evidence at the trial, *the crime for which Mr. Edwards has been convicted by a jury is such that remuneration was to be received someplace along the line.* Aside from the plea of not guilty, which is the defendant's right to plead not guilty, there are no grounds to excuse his behavior from the standpoint of a finding of guilty by the jury." (Emphasis added.)

We agree with the State's contention based upon *People v. Bourke* (1983), 96 Ill. 2d 327, that any *Conover* violation is harmless error. In *Bourke*, the trial judge specifically stated in sentencing the defendant that " 'I would find that the defendant did receive compensation for committing the offenses that are involved here'." (*People v. Bourke*

(1983), 96 Ill. 2d 327, 330.) The appellate court affirmed the defendant's conviction and sentence, finding that the trial court referred to compensation as a factor in aggravation only "in passing." In his appeal to the supreme court, the defendant argued his case was indistinguishable from *Conover*. Rejecting his contention, the supreme court found that "where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." *People v. Bourke* (1983), 96 Ill. 2d 327, 332.

The *Bourke* court examined the record to determine the impact of the compensation factor and noted the trial judge recited additional aggravating factors in reaching his sentencing decision. Likewise, here the trial judge emphasized that the substance involved "has a serious dilatorious [*sic*] physical effect on people," indicating that he believed that defendant's conduct caused or threatened serious harm. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(a)(1).) The court also cited the aggravating factor that the sentence imposed was necessary to deter others from committing the same crime. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(a)(7).) The court also found that imposition of a lesser sentence "would deprecate the seriousness of the crime and the Defendant's conduct." The court in *Bourke* further emphasized that the State did not mention the improperly considered aggravating factor in closing argument; here, this factor was not specifically cited in the State's closing argument in reference to defendant, although the following comment was made by the State at the sentencing hearing:

> "I think it is interesting to note that among the narcotics cases, delivery of cocaine is listed among the Class X felonies, and in comparison with other Class X felonies as set forth by the Legislature, delivery of a controlled substance when it is a Class X also carries with it the Court's prerogative to also impose an enhanced fine. Now, this is, of course, due to, I think, the nature of the crime in that it's a monetary or financial gain that may be reaped by certain segments of this society as they wreak their harm on other segments of the society."

This comment was made to explain why the instant Class X offense could warrant an enhanced fine and was not cited by the State as an aggravating sentencing factor. The trial judge obviously was not influenced by the State's argument because defendant did not receive a fine.

Another factor emphasized by the *Bourke* court and which similarly is applicable to the instant case is that both defendants were

given sentences far below the maximum available for the offenses. The range of sentences for unlawful possession of a controlled substance is between six and 30 years, and defendant received a 12-year sentence. This fact in combination with those previously discussed warrants the conclusion that "the length of defendant's sentence was not increased based on the circuit court's statement that defendant had received compensation for committing [this offense]." *People v. Bourke* (1983), 96 ill. 2d 327, 333.

■■ The last argument advanced by defendant is that his 12-year sentence is excessive. As support for his contention, he emphasizes that he has no previous criminal convictions, was self-employed, supporting his family prior to the instant offense, and was convicted for *possession* with intent to deliver and not *delivery* of a controlled substance. The State responds that defendant was convicted of a Class X felony and that defendant received far less than the maximum sentence. The State also emphasizes that defendant was not remorseful at the sentencing hearing, but rather stated he was only a victim of circumstances.

The imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) The trial judge is normally best able to determine the punishment which should be imposed. (*People v. Butler* (1976), 64 Ill. 2d 485, 490.) In contrast to the appellate court's review of a cold record, the trial court in determining a defendant's sentence is able to consider his credibility, demeanor, general moral character, mentality, age and habits. (*People v. Dukett* (1974), 56 Ill. 2d 432, 452, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.) The trial court here found that a lesser sentence would deprecate the seriousness of the offense. The sentence is closer to the minimum than the maximum sentence allowed by statute, and the trial court's sentencing in the case at bar was not an abuse of discretion.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.