THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OSCAR PINTOS, Defendant-Appellant.

First District (1st Division) No. 86—1959

Opinion filed March 28, 1988.—Rehearing denied August 24, 1988.

Thomas D. Decker & Associates, Ltd., of Chicago (Thomas D. Decker and Richard H. McLeese, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Lynda A. Peters, and Rena M. David, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

On October 14, 1984, Oscar Pintos, Ramon Sosa, and Manuel Diaz were each arrested and subsequently charged with intent to deliver more than 30 grams of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)) and with calculated criminal drug conspiracy (Ill. Rev. Stat. 1983, ch. 56½, par. 1405). Special agents of the Northeast Metropolitan Enforcement Group in the Chicago area (MEG) recovered nine kilograms of approximately 90% pure cocaine at the time of the arrest. Sosa and Pintos were tried simultaneously; Pintos in a bench trial and Sosa in a jury trial. The trial court below found Pintos guilty of intent to deliver and not guilty of criminal drug conspiracy and sentenced him to eight years' imprisonment. Pintos now appeals his conviction. Sosa is not a party to this appeal.

We affirm.

An informant, Diana Brown, introduced undercover narcotics police officer John Mueller to Manuel Diaz, a Florida resident, who was Brown's contact for cocaine, and a meeting was set up in Chicago for October 13, 1984, between Brown, Mueller, and Diaz. Thereafter, spe-

cial agents from MEG and the Federal Drug Enforcement Agency (DEA) observed Diaz arrive from Florida at O'Hare International Airport in Chicago, Illinois, on October 13, 1984, at approximately 12:40 p.m. The agents followed Diaz to the Westin Hotel in Rosemont, Illinois, and later that evening, set up surveillance in rooms 818 and 819, which were across from rooms 808 and 809, which Diaz had reserved. Diaz met with Brown and Mueller at a Chicago restaurant, and Diaz told Mueller that he could deliver eight kilograms of practically pure cocaine for $340,000. However, in order to complete the deal, Diaz told Mueller that he had to get back to his hotel room by 11 p.m. because "he had to meet the drivers who were driving the coke up from Florida."

At about 1:40 on the morning of October 14, 1984, agents from both the MEG and the DEA, looking through the peephole in the door of room 819, observed two men standing in front of the door to Diaz' room. The man later identified as Sosa was carrying a large gift-wrapped box and the man subsequently identified as Pintos was carrying a garment bag and a flight bag. Pintos knocked on Diaz' door, and Diaz admitted the two men. Shortly thereafter, all three men exited room 809 with the box and walked next door to room 808, which Diaz opened with a key. Diaz then returned to his room alone and Sosa and Pintos spent the night in room 808, where the box remained.

At approximately eight o'clock the next morning, Diaz contacted Mueller to set up a meeting in Diaz' room. After the telephone conversation, the agents saw Diaz leave his room, knock on the door of room 808, and enter when the door was opened. The agents then observed room service enter room 808, and, a short time later, they observed Diaz exit room 808 and return to his room, where he remained until Mueller arrived. The agents observed Mueller knock on the door of room 809 and be admitted. Diaz was then observed emerging from room 809, going to room 808, knocking on the door, entering that room, and then leaving with the gift-wrapped box moments later and returning to room 809. The agents testified that when Diaz carried the box from room 808 to room 809 the flaps to the box were open and protruded up an inch or two from the surface of the box, but that the contents of the box were not visible.

At trial, Mueller testified that when the box was opened by Diaz in room 809, there were nine individually wrapped kilograms of cocaine in the box. He stated that, at that time, he performed a field test on the cocaine and then told Diaz that he had to leave but that he would return shortly with the money. Once he was in the hallway, Mueller signalled to the agents in rooms 818 and 819 that the drugs were in

room 809. Mueller then knocked on Diaz' door and when he opened it, the agents placed Diaz under arrest and confiscated nine kilograms of cocaine. The agents next knocked on the door to room 808, which had been slammed shut during the arrest of Diaz, identified themselves as police officers, and arrested Pintos and Sosa when the door was opened.

In this appeal, defendant Pintos raises two issues: (1) whether the evidence presented at trial was sufficient to establish that Pintos knowingly possessed the cocaine with intent to deliver it to the undercover agent, Mueller, or, if not, whether he was legally accountable for its possession by another, *i.e.,* Sosa; and (2) whether the trial court erred when it admitted the hearsay statements of the coconspirator, Diaz, which referred to the arrival of the "drivers" at the hotel, under the coconspirator exception to the hearsay rule.

■■ ■ Defendant Pintos first contends that the evidence presented at his bench trial was insufficient as a matter of law to sustain his conviction on the charge of possession with intent to deliver a controlled substance. To support a conviction for unlawful possession of narcotics with an intent to deliver, the State must establish that the defendant had knowledge of the presence of narcotics, that the narcotics were in the immediate control or possession of the defendant, and that the amount of narcotics was in excess of any amount which might be viewed as merely possessed for personal use. (*People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767, 768; *People v. Knight* (1985), 133 Ill. App. 3d 248, 259, 478 N.E.2d 1082, 1091.) The standard to be applied on review of determinations of whether a defendant had possession and knowledge of the narcotics is that the fact findings of the trial court will only be overturned where the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and, thus, creates a reasonable doubt of guilt. (*People v. Knight*, 133 Ill. App. 3d at 258, 478 N.E.2d at 1091.) Moreover, it is not necessary that the evidence presented at trial exclude every possible doubt, so long as the entire chain of circumstances leads to a reasonable and moral certainty that the accused committed the crime. *People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801, 804.

■ The first element that must be proven here is Pintos' knowledge of the presence of the narcotics. This element of knowledge is rarely susceptible of direct proof, but it can be proven from the evidence of acts, declarations or conduct of the accused from which an inference can be fairly drawn that defendant knew of the existence of the narcotics at the place where they were found. *People v. Embry*

(1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767, 768.

Pintos argues that there is no evidence that he had knowledge of the presence of the cocaine here because he was never actually observed holding the box which contained the cocaine. He notes that the box was closed and wrapped when the agents observed both him and Sosa in the hallway with the box, and that the agents could not see what was in the box when Diaz brought the box from Pintos and Sosa's room to Diaz' room. Pintos further claims that there was no evidence that the contents of the box were discernible to him; no evidence of anything that anyone said to him; no evidence of anything he said to anyone; no evidence of any conduct on his part that demonstrates such knowledge; no evidence that he had any dealings with the buyer; no evidence that he was present at the time of the transaction; and no evidence that he was to receive any benefit from it. From these assertions, Pintos concludes there was no evidence that he knew the box contained cocaine. He cites *People v. Roundtree* (1985), 135 Ill. App. 3d 1075, 482 N.E.2d 693, and *People v. Gore* (1983), 115 Ill. App. 3d 1054, 450 N.E.2d 1342, as factually analogous cases to the present case. In those cases, this court found insufficient evidence to hold that the defendants knew of the narcotics there, even though the contraband was found in places over which the defendants had exclusive control.

■ However, contrary to Pintos' assertions, the record here shows evidence of actions and conduct from which the trial court could have reasonably inferred that Pintos knew of the existence of the cocaine in the box when it was found in Diaz' room. The record shows that when Agent Mueller met with Diaz the night before the sale, Diaz specifically told Agent Mueller he had to go back to the hotel to meet the "drivers" who were bringing the cocaine from Florida to Chicago. Later, Pintos and Sosa both appeared at Diaz' hotel room with a box and that box was subsequently found to contain the cocaine. The fact that Pintos was not actually seen carrying the box was not fatal to the case against Pintos concerning his knowledge of the contents of the box. (See *People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674; *People v. Edwards* (1984), 128 Ill. App. 3d 993, 471 N.E.2d 957.) Moreover, the box which, as stated, was subsequently found to contain the cocaine was brought to the hotel by Sosa, who was accompanied by Pintos, was taken by them to room 808, and was with them in their room overnight. The next morning, when Mueller arrived at Diaz' room to obtain the cocaine, Diaz asked him to wait in room 809, and then went to Pintos' room, and returned in a minute or so with the cocaine in the same box Pintos and his colleague, Sosa, had brought to the hotel the night before. Additionally, the flaps of the box were now

open, indicating that someone had opened the box while in Pintos' room and, as stated, nine kilograms of cocaine were found in the box when it was opened in Diaz' room. The totality of these circumstances, in our opinion, established a reasonable inference of knowledge on the part of Pintos that he knew that the box contained the packages of cocaine which were discovered in it at the time of the arrest.

■■ Here, additionally, Pintos has raised an alternative argument concerning alleged lack of knowledge of the contraband under the theory of accountability for Sosa's actions. He contends that he could not be held accountable for Sosa's actions because there was no evidence of Pintos' knowledge of the contents of the box. Hence, this argument necessarily interrelates to the arguments addressed above concerning Pintos' knowledge of the contents of the box, and, since we have found that the requisite elements for knowledge were satisfied, we need not address the accountability theory. Nevertheless, we find that Pintos was an active participant in the activities here, and thus, could properly also be held responsible under an accountability theory. See *People v. Edwards* (1984), 128 Ill. App. 3d 993, 471 N.E.2d 957.

■■■ The second element which had to be proven at trial was that the cocaine was in the immediate and exclusive control of Pintos. If the necessary control of the narcotics cannot be shown by actual physical possession, it may be established by direct or circumstantial evidence from which legal possession may be inferred. (See *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767; *People v. Whalen* (1986), 145 Ill. App. 3d 125, 132, 495 N.E.2d 122, 125.) This inference which results in a finding of legal possession is known as the doctrine of constructive possession. Given the nature of the concept of constructive possession, the evidence concerning constructive possession often must be wholly circumstantial, as it was here, and, accordingly, the court must weigh those facts which tend to support a defendant's necessary control over the substance against those facts which demonstrate a lack of dominion and control. (*People v. Whalen* (1986), 145 Ill. App. 3d 125, 132, 495 N.E.2d 122, 127.) Furthermore, the fact that other persons are present with the defendant, as was the situation here, will not negate a finding of constructive possession, since possession of narcotics may be joint. See *People v. Embry* (1960), 20 Ill. 2d 331, 335, 169 N.E.2d 767, 769.

Nevertheless, Pintos asserts that since he never had actual possession of the box containing the cocaine, he therefore could not have had actual control of the box. He further argues, alternatively, that because he did not physically possess the box, at best, the State could only have shown constructive possession, if it could show possession at all, and

the facts adduced at trial established that he did not have sufficient control over the box which contained the cocaine to have constructively possessed it.

However, we find the record here shows that Pintos constructively possessed the box which contained the cocaine. As stated, the fact that Pintos was never actually seen carrying the box was not fatal to the State's case. (See *People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674; *People v. Edwards* (1984), 128 Ill. App. 3d 993, 471 N.E.2d 957.) The box was kept overnight in the room where both Pintos and Sosa spent the night. The record further demonstrates, as noted earlier, that the box which was in Pintos' room was the same box in which the cocaine was found immediately after it was brought to Diaz' room, and, thus, although Sosa occupied the room with Pintos, it was still proper for the lower court to find that Pintos had constructive possession of the box. As noted in *People v. Embry* (1960), 20 Ill. 2d 331, 169 N.E.2d 767, possession of narcotics can be joint and we believe that it was here. Accordingly, these circumstances established a reasonable inference of possession on the part of Pintos sufficient to hold that Pintos constructively possessed the cocaine.

We find the cases of *People v. Roundtree* (1985), 135 Ill. App. 3d 1075, 482 N.E.2d 693, and *People v. Gore* (1983), 115 Ill. App. 3d 1054, 450 N.E.2d 1342, on which Pintos relies, factually distinguishable from the facts in this case. In both *Roundtree* and *Gore*, contraband was found in the vehicles which the defendants were driving. In these cases, this court held that there was not sufficient evidence presented to establish that the defendants had exclusive control over the area where the contraband was found, which was, in *Gore*, under the passenger seat, and in *Roundtree*, in a suitcase in the backseat. Clearly the facts in those cases are not analogous to the situation here. Here, the box was not found in a car where Pintos was merely the driver. The situation in the present case involved, as stated above, a totality of circumstances involving the arrival of Pintos and his colleague from Florida, the transportation of the box back and forth between hotel rooms by Pintos, Sosa and Diaz, and the arrest in Diaz' room, where the box was opened and found to contain the cocaine, which had been promised to the undercover agent the night before by Diaz and which Diaz had stated would be delivered by the "drivers" from Florida. Thus, there was considerably more evidence of Pintos' involvement with the contraband here, and hence, of Pintos' control over it.

Lastly, the third element that was necessary for the State to have proven at trial to support Pintos' conviction, for unlawful possession of narcotics with intent to deliver, was that the amount of narcot-

ics confiscated was in excess of any amount that could be viewed as merely for personal use. Here, there can be no dispute that this element was satisfied. The agents confiscated nine kilograms of cocaine (from the box) which carried a street value of approximately $3.6 million. It cannot reasonably be contended that this amount of narcotics is held merely for personal use. Therefore, we find that there was sufficient evidence presented at Pintos' trial to satisfy all three of the requisite elements necessary to support Pintos' conviction for unlawful possession of cocaine with intent to deliver. The totality of the circumstances established, with a reasonable certainty, that Pintos was an active participant in the crime, and thus, the judgment of the trial court was not palpably contrary to the evidence presented. Hence, we must uphold, as we do, the trial court's determination here.

■■■ The second issue Pintos raises on review is whether the statement of Diaz made to Agent Mueller concerning the "drivers" was inadmissible hearsay and did not come within the coconspirator exception. The admission of hearsay testimony regarding a coconspirator requires a foundation in which a *prima facie* case of conspiracy is established by a preponderance of nonhearsay evidence, independent of the statement itself (*People v. Cortes* (1984), 123 Ill. App. 3d 816, 463 N.E.2d 885), which occurs either before or after the alleged hearsay testimony (*People v. Goodman* (1980), 81 Ill. 2d 278, 284, 408 N.E.2d 215, 217). The *prima facie* case must show that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach a common end by criminal means. (*People v. Edwards* (1984), 128 Ill. App. 3d 993, 1004, 471 N.E.2d 957, 965.) The existence of the agreement may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused. *People v. Gray* (1980), 85 Ill. App. 3d 726, 729, 410 N.E.2d 493, 495.

■■■ Pintos argues that the State did not establish a *prima facie* case of conspiracy because the independent evidence here did not demonstrate that Pintos knew that the box he and Sosa brought with them contained cocaine. The State, however, argues that all the independent evidence, viewed together, established that Pintos did know that the box he and Sosa brought from Florida contained narcotics and that, therefore, he was engaged in a common plan to accomplish a criminal goal. As set forth above, we agree with the State's argument that Pintos' actions, when viewed as a whole, established that he knew the box which he and Sosa brought with them contained cocaine.

The evidence here also established a reasonable inference that Pintos was engaged in a common plan with Diaz and Sosa to accomplish a criminal goal. The specific evidence, as set forth above, showed that

when Pintos and Sosa arrived in Chicago, they had a box with them and that Pintos and Sosa stayed in the room next to Diaz and kept that box in the room with them overnight. The next morning, when Diaz went into Pintos and Sosa's room, he left their room with the box, which was, at that point, open on top. That box contained the nine kilograms of cocaine which Diaz tried to sell to undercover Agent Mueller. Based on this independent circumstantial evidence, we find that the State did, in fact, establish a *prima facie* case of conspiracy and that Pintos was an integral part of that conspiracy. See *People v. Cortes* (1984), 123 Ill. App. 3d 816, 463 N.E.2d 885.

■■■ Once the State has laid this foundation, *i.e.*, established a *prima facie* case, the State must then show that the statement itself occurred "in the course of" a conspiracy of which the defendant was a member. (See *United States v. Urbanik* (4th Cir. 1986), 801 F.2d 692, 697; *cf. United States v. Williams* (7th Cir. 1986), 798 F.2d 1024.) The declaration is admissible only if it was made in furtherance of and during the pendency of the conspiracy and was not self-serving. See *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.

Here, the defendant contends that the admitted statement was merely a narrative or puffing statement on the part of Diaz. The State, on the other hand, argues that the statement was made with the purpose of furthering the objective of the conspiracy by assuring the buyer that the cocaine was on its way to Chicago. See *People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103.

■■■ In *People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140, our supreme court addressed the admissibility of a coconspirator's statements in a case which is factually similar to the instant case. The *Davis* case involved a response to a request for narcotics by an undercover agent from a coconspirator named Hines. There Hines' statements were, as set forth in the testimony of the undercover agent: "He said he didn't have anything right now, he couldn't get to it. He was waiting on the Twin to come because he had the key to the room or the apartment." (46 Ill. 2d at 557-58, 264 N.E.2d at 142.) In affirming the admissibility of the statements against Davis, the court noted that the Twin was later identified as the defendant, Davis, and stated:

> "If this statement of Hines was incriminating as to Davis, it was so only insofar as it reflected a continuing joint endeavor of Hines and Davis to sell narcotics. The statement was thus made in furtherance of a conspiracy, in an effort to temporarily placate a prospective customer. Such statements are the subject of a 'recognized exception to the hearsay rule.' " (46 Ill. 2d at 558, 264 N.E.2d at 142.)

In the present case, Diaz told Agent Mueller that he had to be "back at the hotel at 11:00 that evening, because he had to meet the drivers who were driving the coke up from Florida." Diaz made the statement concerning the "drivers" in the context of a conversation in which Diaz was attempting to assure the buyer, Mueller, that the deal would go through as promised and in which Diaz tried to sell Agent Mueller more narcotics. Such a statement showed the joint endeavor among the coconspirators to sell narcotics and, hence, the statement was made in furtherance of the conspiracy and properly admitted.

 Finally, defendant argues that even if this court finds that Diaz' statement was admissible under the coconspirator exception to the hearsay rule, the admission of the statement, nonetheless, violated his right of confrontation under the sixth amendment. Pintos attempts to factually distinguish *Dutton v. Evans* (1970), 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210, which allowed the admission of certain hearsay statements under the coconspirator exception in that case. We disagree with the defendant's analysis. Under *Dutton,* as adopted by our supreme court in *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215, the Supreme Court upheld the admissibility of the statement there in the face of a constitutional challenge under circumstances similar to those presented here. In *Dutton,* as in this case, there was independent evidence of the reliability of the statement, because the statement in *Dutton,* just as Diaz' statement here, was spontaneous and against the speaker's penal interest. Thus, the circumstances here, again like those in *Dutton,* went beyond a mere showing that Diaz had no apparent reason to lie to the undercover agent. While we find that the requirements of the *Dutton* case were satisfied, we note that the United States Supreme Court has recently held that there is no longer any need for an independent showing of reliability for a statement to be admissible under the coconspirator exception. Thus, no constitutional problem arose here. See *Bourjaily v. United States* (1987), 483 U.S. 171, 97 L. Ed. 2d 144, 107 S. Ct. 2775.

For all the foregoing reasons, we affirm the judgment of the circuit court of Cook County which found the defendant Pintos guilty of intent to deliver more than 30 grams of a controlled substance.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.